**OKLAHOMA NATURAL GAS COMPANY, Plaintiff,**

v.

**APACHE CORPORATION, Defendant and Third–Party Plaintiff,**

v.

**Kaiser–Francis Oil Company, and George B. Kaiser, an individual Third–Party Defendants.**

**No. 01–CV–0095–H(C).**

United States District Court, N.D. Oklahoma.

Dec. 9, 2004.

Bradley W. Welsh, Gene Carson Buzzard, Oliver Sterling Howard, Thomas J. Kirby, Gable & Gotwals, Tulsa, OK, for Plaintiff.

Christopher Kahl Woosley, Cooper McKinney & Woosley PLLP, R. Kevin Layton, Sheila Marie Powers, Boesche McDermott LLP, Tulsa, OK, for Defendant.

Frederic Dorwart, Jean Michael Medina, Paul DeMuro, Fred Dorwart Lawyers, Tulsa, OK, for Third Party–Defendants.

## ORDER

HOLMES, Chief Judge.

This matter comes before the Court pursuant to the Report and Recommendation (the "Report") of United States Magistrate Judge Paul J. Cleary, filed October 19, 2004 (Docket No. 172), wherein he recommends that Plaintiff's Motion for Attorney Fees, filed April 20, 2004 (Docket No. 144), be granted in the amount of $339,547.60. Plaintiff Oklahoma Natural Gas Company ("ONG") filed a written objection to the Report and Recommendation on November 1, 2004 (Docket No. 174). Apache Corporation, Kaiser–Francis Oil Company and George B. Kaiser filed a joint written objection (the "Joint Objection") to the Report and Recommendation on November 1, 2004 (Docket No. 175).

Rule 72(b) of the Federal Rules of Civil Procedure provides in pertinent part that if specific written objections are timely filed,

> [t]he district judge to whom the case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed.R.Civ.P. 72(b).

### I

ONG raises two objections to the Report. First, ONG objects to the hourly rate set for lead trial attorney Oliver Howard. The Report recommended an hourly rate of $250 for Mr. Howard's services. ONG paid Mr. Howard at an hourly rate ranging from $320–375.

The Court is unaware of any attorney fee award in the Northern District that

reflects an hourly rate in excess of $250. The highest rate is appropriate for Mr. Howard, who is one of the most skilled and respected attorneys in the state. The Court, however, is not prepared to increase at this time the maximum award for even the most skilled practitioner. Therefore, the Court finds that the hourly rate of $250 for Mr. Howard is appropriate.

Second, ONG objects to the reductions the Report recommended for block billing. The Report found that block billing prevented an adequate evaluation of whether particular time entries were reasonable. Therefore, the Report recommended that the revised lodestar amount be reduced by 15 percent. ONG argues that the reduction should have been made only to the time identified as block billing. The Court finds that, based on a *de novo* review of the record, Magistrate Judge Cleary's reductions for block billing are appropriate under the facts and law of the case.

Accordingly, the Court hereby accepts Magistrate Judge Cleary's Report and Recommendation with respect to Mr. Howard's hourly rate and the reduction for block billing.

## II

Apache Corporation, Kaiser–Francis Oil Company and George B. Kaiser raise four objections to the Report in the Joint Objection. First, they object to the Report's recommendation that a Westlaw charge of $5,361.29 be permitted. Second, they object to the absence from the Report of a recommended reduction for "excessive attorney attendance at depositions and hearings." Third, they object to what they consider to be insufficient adjustments in the Report with respect to ONG's paralegal bill. Fourth, they object to the fact

that the recommended lodestar reduction for block billing was only 15 percent, rather than 25 percent.

Based on a *de novo* review of the record, the Court finds as follows: the Westlaw charge of $5,361.24 is appropriate and should be allowed; reductions for "excessive attorney attendance at depositions and hearings" are not compelled by the facts of this case; the paralegal charges allowed by the Report are proper; and the block billing reduction was appropriate in the amount recommended. Accordingly, the Court hereby accepts Magistrate Judge Cleary's Report and Recommendation with respect to these issues.

## III

Based upon a careful review of the record, the Court hereby adopts and affirms the Report and Recommendation of United States Magistrate Judge Paul J. Cleary (Docket No. 172). Accordingly, Plaintiff's Motion for Attorney Fees (Docket No. 144), filed April 20, 2004, is hereby granted in the amount of $339,547.60.

IT IS SO ORDERED.

### *REPORT AND RECOMMENDATION*

CLEARY, United States Magistrate Judge.

The Court entered Judgment in this contract dispute in favor of Plaintiff Oklahoma Natural Gas ("ONG") on April 6, 2004. Pursuant to 12 O.S. § 936, ONG has moved for an award of attorney fees as prevailing party [Dkt. # 144], and District Judge Sven Erik Holmes has referred the matter to the undersigned for report and recommendation. [Dkt. # 148]. ONG seeks $443,546.72 in attorney fees and $5,361.29 in Westlaw charges for a total amount of $448,908.01.[1] Following exten-

---

1. This amount reflects a $2,200 reduction made by ONG at the August 10, 2004, hearing on its fee request. The reduction corrected

three billing errors ONG had recently discovered in its attorney time records. [Exh. 5 to *Oklahoma Natural Gas Company's 8/10/2004*

sive briefing, an evidentiary hearing was held August 10, 2004.[2] In addition to the testimony of Gable & Gotwals attorney Thomas Kirby ("Kirby"), supporting and explaining the fee application, testimony of two expert witnesses was offered to the Court: David Riggs ("Riggs"), a Tulsa attorney with more than 35 years experience practicing law, testified in support of ONG's fee application. Michael Burrage ("Burrage"), a long-time Oklahoma attorney and a former U.S. District Judge of this Court, testified in opposition to the fee application. Having reviewed the parties' briefing and the voluminous documentation submitted, and having heard the testimony and evidence presented at the evidentiary hearing, the undersigned recommends that Plaintiff's Motion for Attorney Fees be **GRANTED** in the amount set forth below.

## I

### Case History

Plaintiff filed this lawsuit on February 8, 2001, alleging breach of the recoupment provision of a take or pay gas purchase contract.[3] [Dkt. # 1]. Apache Corporation ("Apache") Answered and asserted affirmative defenses, including statute of limitations, waiver, settlement, and accord and satisfaction. [Dkt. # 4]. Thereafter, Apache sued KFOC and George B. Kaiser (individually, "Kaiser"; collectively, these Defendants will be referred to as "the Kaiser Defendants") alleging that they were obligated to indemnify Apache for any deficiency payments Apache was found to owe ONG. [Dkt. # 5]. Kaiser Defendants also counter-claimed against Apache for amounts they allegedly reimbursed Apache in error for money ONG recouped from Apache [Dkt. # 10], and Apache subsequently filed a counter-claim against ONG to recover the money ONG allegedly recouped from Apache in error. [Dkt. # 18].

In early October 2001, Apache and KFOC filed a joint motion for summary judgment, contending that a July 1988 Settlement Agreement between ONG and KFOC released ONG's contract claim asserted herein. [Dkt. # 26]. ONG filed a cross-motion for partial summary judgment on the same issue. [Dkt. # 30]. In December 2001, citing ambiguities in the language of the Settlement Agreement, the Court denied both motions. [Dkt. # 44, 45].

A second wave of summary judgment motions came in the spring of 2002: Apache moved for summary judgment against ONG on statute of limitations. [Dkt. # 54]. At the same time, Apache and KFOC jointly moved for reconsideration of the Court's prior denial of their summary judgment motion relating to the 1988 settlement agreement. [Dkt. # 55].

---

*Hearing Exhibits in Support of its Motion for Attorney Fees* (hereafter, *"ONG's 8/10/2004 Hearing Exhibits"*)].

**2.** An evidentiary hearing should generally be held to resolve factual disputes over reasonableness and amount of fees. *Michael A. Cramer, MAI, SRPA, Inc. v. United States,* 47 F.3d 379, 383 (10th Cir.1995).

**3.** ONG and Kaiser Francis Oil Corp. ("KFOC") entered into the subject contract in June 1980 under the terms of which ONG was to take delivery of certain quantities of gas on an annual basis from the Giles No. 1

Well in Grady County, Oklahoma. When KFOC tendered the contract quantity of gas, ONG was required to pay for it whether or not it actually accepted the gas. However, if ONG paid for the gas without taking delivery, any such deficiency payment was subject to recoupment through future deliveries of gas. If by the end of the contract ONG had not recouped all of the deficiency payments, KFOC was to repay ONG the unrecovered sum. In July 1983 KFOC assigned its rights under the contract to Apache. ONG later made demand on Apache for unrecovered deficiency payments of approximately $1.2 million, and Apache failed to pay.

Shortly thereafter, Apache moved for summary judgment against the Kaiser Defendants on its indemnification claim. [Dkt. # 58]. Finally, ONG moved for summary judgment on Apache's affirmative defenses and on ONG's breach of contract claim. [Dkt. # 74]. On April 8, 2002, the Court denied Apache's and KFOC's Motion for Reconsideration. [Dkt. # 71]. On June 17, 2002, the remaining summary judgment motions were referred to the undersigned for Report and Recommendation [Dkt. # 90]. A Report was issued on September 12, 2002 [Dkt. # 98], recommending that ONG's motion be denied in part and granted in part, that Apache's motion against the Kaiser Defendants be granted and that the motion against ONG be denied. The Report and Recommendation was adopted on October 17, 2002. [Dkt. # 103].

Before trial the parties stipulated that the amount of unrecovered deficiency payment claimed by ONG was $1,243,130.43 [Dkt. # 66] and waived jury. [Dkt. # 67].

The case was tried on June 20 & 25 and July 28–29, 2003. Judge Holmes entered Findings of Fact and Conclusions of Law on March 25, 2004 [Dkt. # 139], and two weeks later entered Judgment in favor of ONG for $1.2 million [Dkt. # 141]. Apache and the Kaiser Defendants have filed their Notices of Appeal to the Tenth Circuit Court of Appeals. [Dkt. ## 152 & 154].

## II

### *Complexity of the Case*

While the case involved multiple parties, their respective interests were not complicated, ONG's Complaint alleged a single breach of contract claim against Apache for failure to repay deficiency payments that were not recouped. The interests of KFOC and Kaiser were virtually identical, and Apache's interests—with the exception of Apache's Third Party indemnification claim—were similarly aligned with the Kaiser Defendants with respect to ONG's underlying contract claim.

Apache asserted two key affirmative defenses: First, that a July 1988 settlement agreement between ONG and KFOC also covered ONG's contract claim against Apache. Second, that the statute of limitations had run on ONG's contract claim. The case presented interesting factual issues; however, in spite of these issues, the lawsuit was not extraordinarily complex. The number of depositions taken and the number of documents exchanged were relatively small, and the underlying theory of contract recovery was straightforward.

## III

### *Applicable Law*

In diversity cases such as this, attorney fees are substantive and are determined by state law. *Oulds v. Principal Mutual Life Ins. Co.*, 6 F.3d 1431, 1445 (10th Cir.1993). Oklahoma follows the American Rule—each litigant is responsible for its own attorney fees unless that rule is modified by statute or contractual provision. *State ex rel. Dept. of Transp. v. Norman Indus. Dev. Corp.*, 2001 OK 72, ¶ 7, 41 P.3d 960, 962. The dispute at issue concerns a written contract for the purchase or sale of goods, and the undersigned concludes—and the parties agree—that such a contract falls within 12 O.S. § 936. *RJB Gas Pipeline Co. v. Colorado Interstate Gas Co.*, 813 P.2d 1, 13 (Okla. App.1989). The statute provides:

In any civil action to recover for labor or services rendered, or on an open account, a statement of account, account stated, note, bill, negotiable *instrument*, or contract relating to the purchase or sale of goods, wares, or merchandise, unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be al-

lowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

Section 936 reflects the Legislature's intent to mandate prevailing party attorney fees *in actions to collect money promised,* however evidenced—promissory note, negotiable instrument, account for property, labor or services or a bill or contract for goods. *Kay v. Venezuelan Sun Oil Co.,* 1991 OK 16, 806 P.2d 648, 651, n. 11. The rationale for this departure from the American rule appears to be two-fold: First, to make whole the successful party in such litigation. Second, to create an economic incentive influencing decisions whether to pursue legal relief and whether to settle or resist a claim pressed by another.[4]

■ An award of fees under section 936 is mandatory, *Arkla Energy Resources v. Roye Realty and Developing, Inc.,* 9 F.3d 855, 865 (10th Cir.1993) (citing *Ellis v. Lebowitz,* 1990 OK 107, 799 P.2d 620, 621); however, in all cases the amount of fees awarded must be reasonable. *Morgan v. Galilean Health Enterprises, Inc.,* 1998 OK 130, ¶ 14, 977 P.2d 357, 364. The determination of reasonableness and the amount of the fee award are generally left to the sound discretion of the district court. *Arkla Energy,* 9 F.3d at 865 (citing *Wilkerson Motor Co. v. Johnson,* 1978 OK 12, 580 P.2d 505, 509); *Gamble, Simmons & Co. v. Kerr–McGee Corporation,* 175 F.3d 762, 773 (10th Cir.1999) (applying 12 O.S. § 936). An award of fees must be reasonable under the particular circumstances and must bear some reasonable relationship to the amount in controversy. *Southwestern Bell Telephone Co. v. Parker Pest Control, Inc.,* 1987 OK 16, 737 P.2d 1186, 1189.

■ ONG is seeking fees based on a "lodestar" computation. The burden is on ONG to demonstrate that the time for which compensation is sought was reasonable and necessary in order for the court to decide the fee amount to be awarded. *Oliver's Sports Center v. National Standard Ins. Co.,* 1980 OK 120, 615 P.2d 291, 295; *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.,* 1996 OK 121, 932 P.2d 1091, 1099–1100 (Lawyers seeking fees must present detailed time records and offer evidence of reasonable value of services rendered). The Oklahoma Supreme Court has outlined a two-step procedure for arriving at a reasonable fee: (1) determine the compensation based on an hourly rate, and (2) enhance it by adding an amount arrived at by applying the factors set forth in *State ex rel. Burk v. City of Oklahoma City,* 1979 OK 115, 598 P.2d 659, 660–61, or those provided for in Rule 1.5 of the Oklahoma Rules of Professional Conduct. 7 OKPRAC § 24.8 (West 1999). In this case, ONG does not seek enhancement of its claimed fee; therefore, the Court's chore is to determine the compensation to which ONG is entitled based on the services provided and the applicable hourly rate.

The essential task for the court is to determine the reasonable time spent on the case and multiply those hours by the hourly rate generally charged for comparable work in this market. Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 3d § 2675.1, p. 376. Although Oklahoma law governs this determination, federal case law may also be helpful in applying the fundamental reasonableness test. *See Finnell v. Seismic,* 2003 OK 35, ¶ 17 n. 38, 67 P.3d 339, 346 n. 38 (noting that the federal standards are substantially similar

---

**4.** For a general discussion of the theories underlying fee-shifting statutes such as 12 O.S. § 936 *see,* Thomas D. Rowe, Jr., *The* *Legal Theory of Attorney Fee Shifting: A Critical Overview,* 1982 Duke L.J. 651, 665 [September 1982].

to those contained in Rule 1.5 of the Rules of Professional Conduct, 5 O.S.2001, Ch.1, App. 3–A and "an exhaustive application of either list will almost always lead to a just and reasonable result.").

## IV

### ONG's Attorney Fee Request

In accordance with N.D. LR 54.2, ONG timely submitted its motion for attorney fees with supporting affidavit and itemized accounting of attorney time expended. The lodestar amount sought is $448,908.01. (Exh. "A" to Order[5]). This amount reflects certain volume-based discounts given to ONG by the Gable & Gotwals firm based on total work the firm received from ONG. These discounts range from 13 percent ($9,391.10) of total billing in 2001 to six-tenths of 1 percent ($980.25) in 2002. In addition, by agreement with ONG, Gable & Gotwals reduced the billing rate for Oliver Howard ("Howard") by approximately $20 per hour for 2002–04.

### ONG's Requested Lodestar Amount

The lodestar amount requested by ONG is set forth in Exhibit "A" to the Court's Order. The request includes nearly 2,000 attorney hours representing fees of $413,961.25; nearly 800 paralegal hours representing fees of $46,554; and, Westlaw research charges of $5,361.29. Deducted from the bills paid by ONG were volume discounts totaling $14,768.53. At the August 10, 2004, hearing, ONG corrected several billing errors thereby reducing the fee request by another $2,200. Thus, ONG's lodestar fee request is $448,908.01.

Defendant has stipulated to the hourly billing rates of ONG's attorneys with the exception of Howard. Howard's requested billing rate ranges from $320 to $375 with most of the time (305 hours) billed at $340 per hour. Defendants contend that the market rate is $250–280 per hour. Defendants also object to the hourly billing rate—$100 to $125—for information technology work, claiming that this exceeds the market rate for paralegals.

Defendant's Exhibit # 24R submitted at the August 10, 2004, hearing, outlines numerous other complaints about ONG's fee request, including [6]:

- ☐ Excessive paralegal time;
- ☐ Paralegal assistant time;
- ☐ Excessive attorney time;
- ☐ Excessive brief preparation;
- ☐ Excessive inter-office conferences;
- ☐ Multiple attorneys at depositions, hearings, trial;
- ☐ Time entries lacking complete information or detail (block billing and redactions);
- ☐ Impermissible Westlaw charges.

Defendant requests a total reduction in ONG's fees of $201,796.

## V

### Discussion

The specific items challenged by Defendants are addressed separately below. In assessing this fee application, the undersigned has used the following methodology: First, the lodestar amount requested by ONG has been set forth in Exhibit "A" hereto reflecting the hourly rates and number of hours requested. Second, based on certain recommended reductions to either hourly rates or specific hours

---

5. Exhibit "A" to this Order breaks ONG's fee request into hourly rates and hours charged for each billing attorney and paralegal.

6. Two challenges set forth in Defendants' Exhibit # 24R—duplicate entry ($1,500) and wrong case ($600)—were conceded by ONG at the August 10 hearing and resolved. ONG also noted another instance of time incorrectly recorded in the submitted time records and deducted that amount ($100) as well.

claimed, the undersigned has determined a revised lodestar amount as set forth in Exhibit "B" hereto. Third, the undersigned has then addressed further reductions to the revised lodestar amount accounting for block-billing and other issues involving Defendants' claims of duplication of effort or excessive hours. A general percentage reduction was made to the revised lodestar amount to reflect reasonable adjustments for block-billing and other problems. Finally, the ratio between this final attorney fee amount and the amount in controversy herein was compared to fee awards previously approved by the Oklahoma Supreme Court to ensure that the fee awarded here bore a reasonable relationship to the amount in controversy.

### A. Hourly Rate for Oliver Howard.

ONG seeks compensation for five attorneys who worked on this matter. The attorneys and their billings rates are: Gene Buzzard ("Buzzard") ($185–200); Kirby ($200–210); Brad Welsh ("Welsh") ($120–155), Howard ($320–375), and C. Burnett Dunn ("Dunn") ($210). Kirby was the managing attorney on the case, while Howard served as lead trial attorney. Welsh did most of the legal research and drafting. Buzzard managed the case initially until Kirby was available to assume that role. Dunn was a witness on behalf of ONG. Defendant's expert witness suggests that the proper billing rate for an attorney competent to handle this case is $250–280 per hour, while ONG's expert finds Howard's billing rate acceptable.

■ For comparison, the highest hourly rate charged by any defense attorney through the trial of this matter was $250.

No other lawyer on either side of the case billed at more than $200 per hour through the date of trial [Exh. # 7 to *Defendants' Hearing Exhibit Notebook* (hereafter, "*Defendants' Hearing Exhibits* ")]. This observation is not conclusive of the matter, but may be indicative of the prevailing local rate for similar work. ONG is entitled to the prevailing rate for like services based on local standards. *Morgan,* 1998 OK at ¶ 16, 977 P.2d at 364–65. *See also Malloy v. Monahan,* 73 F.3d 1012, 1018 (10th Cir.1996) ("A reasonable rate is the prevailing market rate in the relevant community.")

■ Evidence presented at trial included a survey of representative Tulsa law firms and their range of billing rates for attorneys with various levels of experience. This survey indicates that the hourly rate for lawyers of Howard's experience range from $150 to $400.[7] The survey only indicates the range of hourly rates. It does not indicate the number of lawyers who bill at each rate. Based on the evidence submitted, the prevailing community billing rates and rates that this court has approved in similar cases, the undersigned concludes that the prevailing hourly rate for lawyers competent to handle litigation of this sort is $250 per hour. Howard undoubtedly commands—and receives—a higher hourly rate, but under a fee-shifting analysis, one's adversary is not required to pay a premium rate.[8] The case at bar, while offering some unique factual issues, would not be classified as particularly complex, nor was it document intensive—only about 3000 documents were exchanged. Finally, pursuant to agreement of the parties

---

**7.** This range includes lawyers with 15 to 25 + years experience. The undersigned believes the hourly rates for all of these experience levels are relevant to the determination of an appropriate hourly rate herein.

**8.** ONG may wisely and for good reason choose to travel the litigation highway in a Lexus rather than the more common Chevrolet. However, under a fee-shifting statute such as presented here, the losing party is only responsible for the cost of the Chevrolet, if that is the standard in the community.

the matter was tried to the Court on stipulated damages—thereby reducing the costs associated with trial.

Using the $250 hourly rate for Howard results in a *reduction of $32,722.50* in ONG's total fee request.

### B. Paralegal time and rates.

■ Oklahoma law recognizes that in appropriate circumstances paralegal fees may be recovered under a fee-shifting statute such as § 936. Recovery of paralegal fees "is limited to work for services performed, *which otherwise would have had to have been performed by a licensed attorney at a higher* rate." *Taylor v. Chubb Group of Ins. Cos.,* 1994 OK 47, 874 P.2d 806, 809 (Okla.1994) (emphasis in original) (hereafter, *"Chubb"*). Defendants challenge the fees claimed for paralegal work on three bases: (1) excessive hourly rates; (2) excessive hours; (3) claims for paralegal assistant time. The court must determine if the paralegal time is for work that would otherwise have had to be performed by an attorney, if the hours so recorded are reasonable and necessary and whether the rate of paralegal compensation conforms to the prevailing community standard. As always, the claimed fees must be reasonable and ONG bears the burden of supporting the claimed amount. *Oliver's Sports Center,* 615 P.2d at 294–95.

#### (1)

#### Paralegal Rates

ONG's attorneys, Gable & Gotwals, used three types of paralegals in this case: certificated paralegals, paralegal assistants and a paralegal specializing in information technology. Certificated paralegals—Cheryl Anderson ("Anderson") and Debbie Baker ("Baker")—billed at $95 and $80 per

hour respectively. Paralegal assistants Katherine Jones ("Jones") and Bertha Edens ("Edens") billed at $30 and $25 per hour respectively. Information technology specialist Don Lovy ("Lovy") billed at $100 to $125 per hour.[9]

■ Based on the survey information submitted, it appears that paralegals in the Tulsa area bill at $60 to $80 per hour depending upon responsibilities. Here, Anderson and Baker had supervisory responsibility over Jones and Edens and performed key functions regarding document management, development of privilege log, preparing demonstrative exhibits and maintaining a document database. The undersigned concludes that given these responsibilities, the billing rates for Anderson and Baker are not excessive.

■ The undersigned also finds that the billing rates for Jones and Edens are below the market rate, and, therefore, not excessive. The hourly rate for Lovy approaches that of an associate attorney and is, therefore, excessive for a paralegal. Accordingly, Lovy's hourly rate will be reduced to $85 per hour. This reflects a more appropriate billing rate for a paralegal with specific technical expertise.

#### (2)

#### Paralegal Hours.

The paralegals and assistants described above had substantively different roles in the litigation. Anderson's duties entailed document management and work on a document database. Baker was involved in designing the document database, reviewing records produced by defendants for inclusion in the document database and overseeing document production. Jones spent her time on Bates labeling, copying,

---

**9.** Plaintiff contends that Lovy is a paralegal; Defendants argue that Lovy's work does not . meet the test of *Chubb.*

and other unspecified work involving the firm's Summation document control software.[10] Edens worked "coding," copying, and organizing documents for inclusion in the Summation database. The vast majority of paralegal time was logged by Baker and Jones. Both billed for more than 300 hours over the life of the case. Lovy billed 48.25 hours for trial preparation and assistance at trial.

Paralegal time was heavily concentrated in two time periods: From January to June 2002, approximately 445 paralegal hours were recorded. From April to July 2003, approximately 300 paralegal hours were recorded.

### (a) Paralegal Work from January to June 2002

Baker and Jones performed the bulk of the paralegal work recorded from January to June 2002. Baker recorded about 85 hours and Jones recorded about 260 hours.

Baker's time was clearly spent on functions that an attorney would otherwise have to have performed. Baker's time for this period warrants no reductions.

Jones' work during this period is summarized by two time entries that appear over and over in her records: "Summation," and "Coding documents into Summation database." This time represents a total of 260 hours or $7,800 in claimed fees. In addition, there are about seven hours making copies.

 The undersigned concludes that making copies is a secretarial function that should be included in firm overhead. Thus, seven hours or $210 will be deducted from the fee application. The undersigned is also concerned with the large amount of time that is inadequately detailed. More than 45 hours ($1,350) are recorded with the simple notation, "Summation." This does not provide adequate detail to permit a meaningful review of the reasonableness of the activity. Accordingly, this time will be disallowed. In addition, 216 hours—representing $6,480—are recorded for "Coding documents into Summation database." Defendants have submitted to the Court a bid sheet from in Data Corporation indicating that a significant portion of this coding work could have been outsourced at a total cost of $1,323.90. While the undersigned is not convinced that outsourcing this work would provide all of the same benefits as performing it in-house— e.g., paralegal familiarity with the documents can lead to better deposition and trial preparation—the disparity between the outsource cost and the in-house cost is stark. The Court will reduce the time spent coding documents by one-half or $3,240.

This results in a total reduction for this phase of paralegal work of $4,800.

### (b) Paralegal Work from April to July 2003

Paralegal work in this time period was spent preparing for and attending the non-jury trial of this case. Four paralegals recorded time during this period: Baker, 213 hours ($17,040); Anderson, 35.5 hours ($3,372.50), and Lovy, 48.25 hours ($5,287.50).

 Much of Baker's time was spent preparing trial exhibits and coding exhibits and updating the exhibit database for trial. Approximately 125 hours in May and June were spent on these tasks. The undersigned finds that this is an excessive amount of time given that the case was tried non-jury and upon stipulated damages. Given the small number of wit-

---

10. ONG's lawyers used two pieces of litigation software: Summation, a popular document management package, and Sanction which creates image files to display documents or deposition transcripts at trial.

nesses and critical exhibits, the case did not require computerized presentation of exhibits. Defendants are only obligated to pay for attorney time that was reasonable and *necessary*. Accordingly, the Court will strike half of Baker's May–June time. This results in a reduction of $5,000 for this phase of paralegal work.

 Defendants challenge the recoverability of fees for Lovy's time. Lovy's work consisted largely of preparing exhibits for computer presentation at trial and for computer work performed during trial. Defendants assert that there is no Oklahoma authority for recovery of these fees. In *Chubb*, the Oklahoma Supreme Court recognized that the term "attorneys fees" encompasses fees for services performed by legal assistants and paralegals. The court offered a non-exclusive list of tasks that a legal assistant may perform. The list includes: organizing trial exhibits and assisting lawyers at trial. *Chubb*, 874 P.2d at 809. The work that Lovy performed is akin to these tasks. The trial exhibits were organized for electronic presentation and Lovy assisted at trial in presenting evidence electronically. The undersigned concludes that this time is compensable at the reduced hourly rate described above. This results in a reduction of $1,186.25 in Lovy's claimed fees.

For the reasons set forth above, *paralegal charges will be reduced by a total of $10,986.25.*[11]

## C. Redacted Time Entries.

 Defendants seek to reduce ONG's fee request because certain billing records have been redacted, thus making it impossible to determine what work was done. Defendants ask that Welsh's time be reduced at set forth in Defendants' Exhibit

19 and the fee application reduced a total of $4,424.

It is the applicant's responsibility to provide the court with contemporaneous billing records containing sufficient detail to allow the Court to determine if the fees requested were reasonable and necessary. Obviously, this review becomes problematic when the supporting time records redact information essential to the task. After reviewing the time records at issue the undersigned finds that the fee request should be *reduced by $4,104* due to redactions that result in insufficient detail to support the time claimed. This reduction in Welch's fees is reflected in the revised lodestar figure set forth in Exhibit "B" to this Order.

## D. C. Burnett Dunn Attorney Fees.

 Defendants seek to reduce ONG's fee application by $1,627.50 for time charged by attorney Dunn who was a witness in this case. Dunn's time was logged on seven days in March and April 2002. The total of 7.75 hours clearly is related to Dunn's status as a witness—not a lawyer—in the case. For example, Dunn billed three hours on April 19, 2002, for the time spent giving his deposition and one hour on April 29 and 30 for time spent reviewing his deposition for corrections. Other billed time concerns preparation for his deposition. Dunn was not serving as a lawyer-advocate, but as a fact witness. This time cannot be billed to the client, and, therefore, the fees cannot be shifted to Defendants. Accordingly, ONG's fee application will be *reduced by $1,627.50*. This reduction is reflected in the revised lodestar figure, Exhibit "B" hereto.

---

11. This includes Lovy's time ($1,186.25), seven hours of copying ($210), inadequately described time ($1,350), excessive document coding ($3,240) and excessive exhibit preparation ($5,000).

## E. Duplicate Attorney Appearances.

■ Defendants seek to reduce ONG's fee request by $10,000 because multiple attorneys attended hearings, depositions and trial. There is no legal basis to limit an attorney fee award to only one attorney. *See, e.g., A.J. v. Kierst,* 56 F.3d 849, 863–65 (8th Cir.1995) (Use of more than one attorney in multiple party litigation recognized as both desirable and common). When more than one attorney represents the prevailing party "fees awarded should reflect the efforts of all, at least to the extent that the time reported does not reflect duplication of effort or work that should be performed by non-lawyers." *Id.* at 863–64; *Reynolds v. Coomey,* 567 F.2d 1166, 1167 (1st Cir.1978). *See Burk, supra* (awarding fees to multiple lawyers). The Court has not been cited any Oklahoma authority that prohibits more than one lawyer from seeking fees under a fee-shifting statute. Certainly the federal cases do not support such a rule. *Kierst,* 56 F.3d at 864 ("We are not aware of any cases, however, which hold that a court may reduce attorneys' fees *solely* on the basis that multiple attorneys helped to secure a prevailing party's success.") (emphasis in original). However, if multiple representation results in inefficiency or duplication of effort, the court may reduce an attorney fee request accordingly. *Id.*

Citing *Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983), Defendants argue that ONG must justify the presence of more than two lawyers at trial and hearings and more than one lawyer at depositions.[12] In *Ramos,* the court said:

[W]e think that the presence of more than two lawyers during trial or the presence of more than one lawyer at depositions and hearings must be justified to the court. No fees should be awarded for hours reported by lawyers or law clerks who are present at depositions, hearings, or trial for the purpose of being trained and who do not participate in or contribute to the proceedings. *Id.* at 554, n. 4.

■ Kirby testified at the attorney fee hearing that three lawyers divided the work assignments for ONG on this case[13]: Kirby was the managing attorney, overseeing all aspects of the case; Howard was lead trial counsel; and, Welsh was responsible for drafting pleadings and proposed Findings of Fact and Conclusions of Law. Kirby and Howard split the deposition work, a common approach in modern business litigation. The undersigned finds no basis for fee reduction based solely on the number of lawyers representing ONG, given their clearly defined tasks.

## F. Westlaw Legal Research Charges.

■ Defendants seek to reduce ONG's fee application by $5,361.29—the amount of claimed Westlaw charges. These charges are for access to the Westlaw database and are in addition to the fees billed for attorney time spent on research after accessing the Westlaw database.

Oklahoma courts have not yet answered the question of whether one can recover Westlaw charges as a substitute for attorney fees. In *Wilson v. Glancy,* 1995 OK

---

**12.** It should be noted that ONG was not alone in using multiple attorneys. Apache was represented by R. Kevin Layton, Sheila Powers and Christopher Woosley. The Kaiser Defendants were represented by J. Michael Medina, Paul DeMuro and Frederic Dorwart.

**13.** Buzzard also worked on the case, but only until Kirby was free from another assignment to take over managerial responsibility. Thereafter, Buzzard did not bill on the matter. Dunn was a witness for ONG. The undersigned has stricken fees requested for Dunn on the ground that he was serving as a fact witness, not an attorney when this time was incurred.

141, 913 P.2d 286, 292 (Okla.), the Oklahoma Supreme Court indicated that Westlaw research is not recoverable as an element of *costs* [14]; however, *Wilson* did not address the issue of whether Westlaw charges could be recovered as *attorney fees*.

The undersigned now looks for guidance from other jurisdictions, and here a clearer picture emerges. The prevailing view among federal courts is that computer research charges are recoverable as attorney fees as a "substitute for an attorney's time." *E.g. United States for Use & Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp.,* 95 F.3d 153, 173 (2nd Cir.1996); *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago,* 38 F.3d 1429, 1440–41 (7th Cir.1994); *Johnson v. University College of Univ. of Ala. in Birmingham,* 706 F.2d 1205, 1209 (11th Cir.1983); *Camargo v. Trammell Crow Interest Co.,* 318 F.Supp.2d 448, 451 (E.D.Tex.2004); *Webb v. Abbruzzese,* 2003 WL 21771017, *3 (E.D.Tex.). This Court has approved such charges. *Deborah Robinson, D.O. v. Armen Marouk, D.O., et al.,* Case No. 96–CV–0160–K(E) *(Report and Recommendation,* p. 18, June 21, 2000, *adopted, Order,* July 25, 2000). The theory is that computer research reduces the amount of attorney time required for legal research and, therefore, saves the client money. It appears that, at least in the federal courts, the modern trend is to allow recovery of computer research charges as attorney fees.[15]

Another consideration is the equity of the proposition before the Court. At the same time that ONG submitted the application that is the subject of this Report,

Apache also filed an application for fees and expenses as against the Kaiser Defendants. [Dkt. # 142]. In that Application, Apache sought $107.25 for computer research. The Kaiser Defendants did not object to this charge or any other element of Apache's fees and expenses. [Dkt. # 149]. The Kaiser Defendants reiterated this position at the hearing on fees on August 10, 2004. Thus, Apache has sought—and the Kaiser Defendants did not oppose—the very same charges they now object to in ONG's application. Clearly, the determination of this issue should be consistent for all parties.

The undersigned concludes that Oklahoma is mute on the issue of recovery of computer research charges as attorney fees, but that federal cases favor the award of such expenses. Further, since Apache itself has requested reimbursement for computer research costs and the Kaiser Defendants have not objected thereto, equity and consistency militate in favor of recovery. The computer charges will be allowed.

### Revised Lodestar Amount.

Incorporating the $250 hourly for Howard and the reductions noted above from paralegal time results in a revised lodestar figure of $395,366.51. This number reflects the reasonable hourly rate multiplied by billed hours. However, because block billing makes it impossible for the undersigned to fully determine the reasonableness of the billed hours, and because the undersigned has found some duplication of effort and excessive charges as set forth below, a further reduction is required.

---

**14.** Similarly, the Tenth Circuit Court of Appeals has also noted that computer legal research charges are not statutorily authorized costs under 28 U.S.C. § 1920. *Jones v. Unisys Corp.,* 54 F.3d 624, 633 (10th Cir.1995).

**15.** Not all federal courts agree with this analysis, however. *See Standley v. Chilhowee R–IV School Dist.,* 5 F.3d 319, 325 & n. 7 (8th Cir.1993) (computer assisted legal research must be factored into the attorneys' hourly rate and may not be added to fee award).

### G. Further Reductions for Block Billing and Excessive Attorney Time

Defendants seek a reduction of ONG's requested fees because the fee application lumps together unrelated tasks without indicating how much time was spent on each, therefore, making it impossible to assess the reasonableness of the time expended.. Defendants' total requested reductions on this and related issues are:

| | |
|---|---|
| ☐ Excessive Attorney Deposition Preparation | $ 22,000 |
| ☐ Excessive Brief Preparation | $ 20,000 |
| ☐ Excessive Inter–Office Conferences | $ 31,264 |
| ☐ Excessive Attorney Document Review | $ 4,000 |
| ☐ Block Billing | $ 35,940 |
| **TOTAL** | $113,204 |

These issues raised are addressed below.

#### (1)

#### Excessive Deposition Preparation

Four ONG attorneys billed deposition preparation: Kirby, 153 hours; Howard, 22.5 hours; Welsh, 2.7 hours, Dunn, 2.5 hours. The Court will dispense with the two smallest billings first. Dunn's hours have already been disallowed. *See* § V(D) above. No further discussion of Dunn's time is necessary.

Defendants attribute deposition preparation time to Welsh based on two time entries: On Feb. 8, 2002, Welsh billed 2.3 hours for drafting a memo on summary judgment issues to assist others in preparing for depositions. This is not duplicative of other attorneys' work, nor is it excessive. On May 21, 2002, Welsh billed 4 hours preparing Kirby for the deposition of an expert witness. According to Kirby's testimony Welsh was working on a *Daubert* challenge to the witness. Thus, this time is not duplicative or excessive.

The bulk of the deposition preparation time is attributable to two attorneys: Howard and Kirby. Kirby was the managing attorney on the case and had primary contact with the client, while Howard was the lead trial attorney. Fifteen depositions were taken in the case, seven ONG witnesses were deposed while Kaiser–Francis and Apache each had four witnesses deposed. Howard and Kirby divided the work of taking and defending depositions, with Kirby handling the greater number of witnesses.

A review of the records indicates that Howard billed for about 22.5 hours of deposition preparation time and Kirby billed about 150 hours. The undersigned does not find Howard's 22.5 hours of preparation time excessive. Two of the witnesses he deposed were Apache's 30(b)(6) witnesses, and Jim Willis was an officer of Kaiser–Francis Oil Corp. The amount of deposition preparation by Howard is not excessive.

Kirby's greater preparation time is attributed to two factors; First, as the attorney managing the case, he had ultimate responsibility for the case and had to be familiar with all aspects of the litigation. Second, his more extensive preparation often supplemented Howard's knowledge and saved money by reducing Howard's preparation time at his higher billing rate. From a review of the time records and the amount of deposition preparation time spent by Apache and the Kaiser Defendants relative to the amount of deposition testimony they elicited, it appears that Kirby's additional hours reduced the preparation time Howard would otherwise have incurred and resulted in a savings to the client. Accordingly, the undersigned finds no basis for reduction of the attorney deposition preparation time.

#### (2)

#### Excessive Brief Preparation

Defendants seek to reduce ONG's fees by $20,000 for "excessive brief preparation." Defendants contend that the time that ONG spent on briefing far exceeds that which the Defendants expended together. Defendants' Hearing Exhibit 16

indicates that ONG spent 584 hours (representing $90,680) on briefing while the Kaiser–Francis Defendants spent 248 hours ($50,200) and Apache spent 190 hours ($32,950).[16]

ONG filed three briefs in 2001 involving the summary judgment motion related to whether the July 1988 Settlement Agreement between ONG and KFOC released ONG's claim against Apache.

In 2002, ONG prepared and filed 12 briefs including a brief in support of Motion to Compel (later withdrawn); four briefs concerning motions for summary judgment; two briefs supporting ONG's Motion to Exclude Defendants' expert witness; two briefs in support of ONG's Motion in Limine regarding Witnesses Pam Sublette and Watkins; an Objection to the Magistrate Judge's Report and Recommendation on the Parties' motions for summary judgment; and a Reply to the Defendants' objection to the Magistrate Judge's Report and Recommendation on Parties' Motions for summary judgment.

In 2003, ONG filed various Trial Briefs, proposed Findings of Fact and Conclusions of Law and briefs regarding attorney fees and Bill of Costs.

The undersigned has reviewed the time spent on briefing. Generally, two attorneys—Kirby and Welsh—worked on any briefs. Welsh was responsible for research and drafting; Kirby reviewed and revised these drafts. The undersigned encountered difficulty in determining the extent of any duplicative effort due to the block billing employed by ONG's attorneys. The undersigned has recommended a further reduction in fees because of this block billing and its impact on analysis of the time spent on such tasks such as briefing. As a result of that reduction, and after review of the specific work done on

the briefs submitted herein, the undersigned recommends no further reduction for excessive briefing.

(3)

**Excessive Attorney Document Review**

Defendants seek a reduction of $4,000 for excessive attorney document review. According to Defendants' calculations, ONG's attorneys spent a total of 67 hours ($12,240) reviewing documents while KFOC only spent 21 hours ($4,190) and Apache only 22 hours ($3,975).

Again, the comparison between time spent by Defendants on document review and that spent by Plaintiff may offer some benchmark for what is a reasonable amount of time for document review, but such comparison is not conclusive. Regardless of the amount of time spent by Defendants, the test is whether the amount of time spent by ONG's lawyers was reasonable under the circumstances. The undersigned has found evidence of excessive document review, however, in attempting to determine the exact amount of any such excess I have again been stymied by the block billing encountered in ONG's attorney time records. Accordingly, a reduction for block-billing will be used to account for excessive attorney document review.

(4)

**Inter–Office Communications**

█ The submitted time records reflect instances in which multiple lawyers conferred with one another and all billed for the time. Obviously, lawyers working together on a case must communicate with each other and that communication may *spare* the client duplication of effort; however, multiple billing for interoffice conferences is problematic because multiple timekeepers are billing for the same

---

**16.** A portion of Apache's and the Kaiser Defendants' briefing time was spent on the indemnification issue—an issue that ONG did not have to brief.

work. At least one court has held that the exercise of good billing judgment requires that only one participant in a conference should bill for that conference. *Taylor v. Albina Community Bank*, 2002 WL 31973738, *4 (D.Or.). Not all courts adopt this broad rule, however. Most courts seem to review such time to determine if it truly reflects duplicative effort. The undersigned has reviewed the interoffice conferences challenged by Defendants. Generally, the challenged time falls into two categories: (1) Time where two attorneys conferred on a matter, but *only one* billed that time.[17] In such a case, there is no issue of duplication of effort and the time should be allowed. (2) Time where two or more attorneys conferred and *all* billed that time.[18] In this instance a reduction for duplication of effort is justified. In this last instance, a determination of how much time should be subtracted is made impossible because of attorney block-billing. The undersigned cannot adequately determine the amount of time each lawyer billed for a conference; thus, the undersigned has resorted to a general reduction for block-billing as described below.

### (5)

### Block–Billing

■ The undersigned's review of ONG's records to determine if an unreasonable amount of hours was spent on specific tasks has been hampered by block billing.[19] Block billing or "lumping" occurs when an attorney records time spent on various tasks on a given day but does not indicate the amount of time spent on each specific task. Block billing creates problems for the court reviewing a fee application. First, it does fulfill the fee applicant's obligation to submit "detailed time records" because time entries do not identify how much time was spent on each task.[20] This prevents the court from determining if a reasonable amount of time was expended on certain work. In addition, where a case involves both claims for which attorney fees may be awarded and others for which an award is not permissible, lumping prevents the court from determining which time is compensable and which is not. *See Taylor*, 2002 WL 31973738 at *3 (Block billing of three or more hours and containing multiple tasks "prevents the court from determining the reasonableness of the hours spent on a specific task.")

The undersigned has found no controlling Oklahoma authority on block-billing. The *Pursley* opinion, *supra*, is one of the few state cases to allude to the issue. Thus, the undersigned again looks to guidance from other jurisdictions. The Tenth Circuit has not adopted a *per se* rule prohibiting fees due to block billing. *Cadena*

---

17. For example, the time records reflect that on Dec. 14, 2000, and Jan. 5, 2001, Buzzard recorded time spent conferring with Kirby; however, only Buzzard recorded time for this conference.

18. For example, on June 10, 2003, Howard, Kirby and Welsh all met to discuss the case. All three lawyers billed for this time.

19. The parties' attention is directed to *In re Reconversion Technologies, Inc.*, 216 B.R. 46, 57–58 (Bankr.N.D.Okla.1997), a decision by U.S. Bankruptcy Judge Terrence Michael that addresses this issue in detail.

20. *See,* for example, *Pursley v. Mack Energy Co.*, 1995 OK CIV APP 129, 908 P.2d 289, where the court noted that because of lumping it was not possible to determine how of fee applicant's time was spent on matters unrelated to the lien claims he prevailed on. "The time records do little to inform us in this regard; fewer than ten hours are *expressly* attributed to work on the lien issues or Mack Energy's counterclaim." *Id.*, 908 P.2d at 291 n. 1.

*v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir.2000). Nevertheless, where block billing makes it difficult, if not impossible, for the Court to determine the amount of time spent on specific tasks, a general reduction in attorney fees may be warranted. *See Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir.1998) ("[A] district court *may* discount requested attorney hours if the attorney fails to keep 'meticulous, contemporaneous records' that reveal 'all hours for which compensation is requested and how those hours were allotted to specific tasks.' ") (emphasis added).

 Block billing is a critical problem where, for example, plaintiff alleges claims for which fees may be shifted and others for which fee-shifting is not appropriate. There it is important to determine the time spent on claims for which an attorney fee award is authorized. The Court is not confronted with that particular problem here because the only claim in this matter is a breach of contract claim that both sides agree falls within the fee-shifting provisions of 12 O.S. § 936. However, that does not solve the court's difficulties in assessing the time spent on various litigation activities—e.g., document review, deposition preparation, briefing—that Defendants have challenged. The undersigned is unable to adequately evaluate the time spent on these activities due to block billing. For example, it is impossible to evaluate the following time entry to determine whether too much time was spent preparing for depositions:

> **Draft notes and review documents in preparation for Apache deposition. Telephone conferences with K. Legnon, T. Carney, and J. Jarrett in search for documents. Conference with Debra Baker in search for documents. Telephone conferences with Pete Walker regarding declaration. Telephone conferences with A. Ratliff regarding recoupment calculation.**

> **Draft stipulation on recoupment. Review and revise response brief on summary judgment. Review Apache contract file.**
>
> **TJK 7.3 [hours] [$]1,460.00**

[Exh. 1 to *ONG's 8/10/2004 Hearing Exhibits*, ONG Fees 0095]

Likewise, the Court cannot evaluate the reasonableness of time spent in interoffice conferences when confronted with entries such as this:

> **Teleconference with KFOC counsel office regarding exhibits and conferences with Debra Baker regarding notebooks. Review KFOC trial brief and findings and conferences with Brad Welsh and Oliver Howard regarding same. Conference with Oliver Howard and Brad Welsh regarding exhibits and Adkins and Sublette testimony. Draft letter on Adkins testimony.**
>
> **TJK 5.7 [hours] [$] 1,140.00**

[Exh. 1 to *ONG's 8/10/2004 Hearing Exhibits*, ONG Fees 00212]

Given the block billing present herein and the evidence of some duplication of effort among counsel, the undersigned is faced with a formidable task in determining the proper reduction to be made in ONG's fee application. In *Taylor*, the court noted the problem this creates:

> If this court had the luxury of unlimited time, it could spend days carefully reviewing each and every time entry in order to calculate a reduction in the attorney fee request by date, timekeeper, and amount. Such an extensive review could not be precise, however, given the block billing entries and the necessarily subjective determination of which specific hours should be excluded.

*Taylor*, 2002 WL 31973738 at *5.

Defendants seek a reduction of more than $100,000 to account for problems they have identified related to excessive attor-

ney time and block-billing. After a thorough review of ONG's records, the undersigned does not feel a reduction of this magnitude is warranted. Instead, the undersigned will adopt the tack taken by courts that have used a general reduction to compensate for hours not properly recorded. *See Poynor v. Community Unit School District # 300,* 1999 WL 1101566, *1 (N.D.Ill. Nov.30, 1999); *Reyes v. Nations Title Agency of Illinois,* 2001 WL 687451, *2 (N.D.Ill. June 19, 2001) (10 percent reduction of block-billed time entries); *Mogck v. Unum Life Ins. Co. of America,* 289 F.Supp.2d 1181, 1194–95 (S.D.Cal.2003) (10 percent reduction for excessive interoffice conferences and other problems). This is the most reasonable approach since duplication of effort does not appear to be egregious.

Accordingly, a general 15 percent reduction of the revised lodestar amount will be used to compensate for block billing, interoffice conferences, excessive attorney time and duplication of effort reflected in the time records. This reduction will be applied to the revised lodestar figure so that ONG is not penalized twice. Therefore, ONG's fee application will be reduced by $59,920.16 to account for all of the block billing and necessary time reductions. This reduction brings the **total allowed fee to $339,547.60.**

## H. Relationship of Fees to Amount in Controversy.

■ Final determination of a reasonable attorney fee is subject to the rule that the fee awarded must bear some "reasonable relationship to the amount in controversy." *Finnell v. Seismic,* 2003 OK 35, ¶ 17, 67 P.3d 339, 346; *Southwestern Bell Telephone Co.,* 1987 OK 16, ¶ 17, 737 P.2d at 1189. There is no bright line rule for this determination. The Oklahoma Supreme Court has approved a fee that far

exceeded the amount recovered. *Arkoma Gas Co. v. Otis Engineering Corp.,* 1993 OK 27, ¶ 6, 849 P.2d 392, 395 (approving fee of $5,500 in breach of warranty case where plaintiff sought $70,000 but only recovered $100). The Court has approved fees nearly equaling the amount recovered. *Parker Pest Control, supra,* at 1190 (approving fee of $3,000 in case in which plaintiff sought $3,867 and Defendant confessed judgment for $1,500).

Here, the amount in controversy was approximately $1.2 million. The recommended fee award is $339,547.60. Clearly, this sum comports with the ratio of fees to damages previously approved by the Oklahoma Supreme Court. Accordingly, the undersigned **RECOMMENDS** that ONG's attorney fee application be **GRANTED** in the total amount of *$339,547.60.*

## OBJECTIONS

The District Judge assigned to this case will conduct a de novo review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so within ten days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court. *See Moore v. United States,* 950 F.2d 656 (10th Cir.1991); and *Talley v. Hesse,* 91 F.3d 1411, 1412–13 (10th Cir.1996).

Oct. 19, 2004

1266

### ONG's Requested Lodestar Amount

The lodestar amount requested by ONG is set forth below. The attorney fee application reflects the following number of hours and rates:

| Attorneys | Rate | Hours | Fees |
|-----------|------|-------|------|
| Gene Buzzard | $185 | 63.1 hours | $ 11,668.50[1] |
| | $200 | .5 hour | $ 100 |
| | | | |
| Oliver Howard | $320 | 71.75 hrs | $ 22,960 |
| | $340 | 305 hrs | $103,700 |
| | $375 | 2 hrs | $ 750 |
| | | | |
| Thomas Kirby | $200 | 1,024.8 hrs | $204,860 |
| | $210 | 9.1 hrs | $ 1,911 |
| | $100 | 8.3 hrs | $ 830 |
| | | | |
| Brad Welsh | $120 | 315.8 hrs | $ 37,896 |
| | $135 | 31.1 hrs | $ 4,198.50 |
| | $140 | 160.6 | $ 22,484 |
| | $155 | 5.4 | $ 837 |
| | | | |
| Eric King | $185 | .75 | $ 138.75 |
| | | | |
| C. Burnett Dunn | $210 | 7.75 hrs | $ 1,627.50 |
| | | | |
| **Attorneys Subtotal** | | | **$413,961.25** |

---

[1] Due to a mathematical error in the fee application, Buzzard's total amount claimed is understated by $5. The Attorney Fee Chart submitted with ONG's application states that Buzzard billed 3 hours in 2002 at $185 per hour for a total of $550. The amount should be $555. [Exh. 1 to *Oklahoma Natural Gas Company's 8/10/2004 Hearing Exhibits*].

| Paralegals | Rate | Hours | Fees |
|---|---|---|---|
| Cheryl Anderson | $95 | 38.5 hrs | $ 3,657.50 |
| Debra Baker | $80 | 333.3 hrs | $26,664 |
| Kathy Jones | $30 | 317.25 hrs | $ 9,517.50 |
| Bertha Edens | $25 | 53.5 hrs | $ 1,337.50 |
| Terry Fisher | $45 | 2 hrs | $ 90 |
| Don Lovy | $100 | 29.75 hrs | $ 2,975 |
| | $125 | 18.5 hrs | $ 2,312.50 |

| | |
|---|---|
| Paralegal Fees | $ 46,554 |
| Attorney Fees (from page 1) | $413,961.25 |
| Total Fees (Atty plus Paralegal) | $460,515.25 |
| LESS Discounts to ONG | ($ 14,768.53) |
| **TOTAL FEES REQUESTED** | $445,746.72 |
| Westlaw charges | $ 5,361.29 |
| **AMOUNT REQUESTED IN ONG'S FEE APPLICATION** | $451,108.01 |
| LESS corrections made at 8/10/2004 hearing | $ 2,200.00 |

**LODESTAR REQUEST BASED
ON EVIDENCE AT 8/10/2004 HEARING** **$448,908.01**

1268

## EXHIBIT "B" TO COURT'S ORDER (page 1 of 2)

### Revised Lodestar Amount

The Revised Lodestar Amount is set forth below. The undersigned's recommended reductions in billing rates and hours are indicated in italics:

| Attorneys | Rate | Hours | Fees |
|---|---|---|---|
| Gene Buzzara | $185 | 63.1 hours | $ 11,668.50[1] |
| | $200 | .5 hour | $ 100 |
| | | | |
| *Oliver Howard* | *$250* | 71.75 hrs | *$ 17,937.50* |
| | *$250* | 305 hrs | *$ 76,250* |
| | *$250* | 2 hrs | *$ 500* |
| Thomas Kirby | $200 | 1,024.8 hrs | $204,860 |
| | $210 | 9.1 hrs | $ 1,911 |
| | $100 | 8.3 hrs | $ 830 |
| *Brad Welsh* | $120 | *296.3 hrs* | *$ 35,556* |
| | $135 | 31.1 hrs | $ 4,198.50 |
| | $140 | *148 hrs* | *$ 20,720* |
| | $155 | 5.4 | $ 837 |
| Eric King | $185 | .75 | $ 138.75 |
| C. Burnett Dunn | $210 | *0 hrs* | *$ 0* |
| *Attorneys Subtotal* | | | *$375,507.25* |

---

[1] Due to a mathematical error in the fee application, Buzzard's total amount claimed is understated by $5. The Attorney Fee Chart submitted with ONG's application states that Buzzard billed 3 hours in 2002 at $185 per hour for a total of $550. The amount should be $555. [Exh. 1 to *Oklahoma Natural Gas Company's 8/10/2004 Hearing Exhibits*].

| Paralegals | Rate | Hours | Fees |
|---|---|---|---|
| Cheryl Anderson | $95 | 38.5 hrs | $ 3,657.50 |
| Debra Baker | $80 | 270.8 hrs | $ 21,664 |
| Kathy Jones | $30 | 157.25 hrs | $ 4,717.50 |
| Bertha Edens | $25 | 53.5 hrs | $ 1,337.50 |
| Terry Fisher | $45 | 2 hrs | $ 90 |
| Don Lovy | $85 | 48.25 hrs | $ 4,101.25 |

| | |
|---|---|
| Paralegal Fees | $ 35,567.75 |
| Attorney Fees (from page 1) | $375,507.25 |
| Total Fees (Atty plus Paralegal) | $411,075.00 |
| LESS Discounts to ONG | ($ 14,768.53) |
| TOTAL FEES REQUESTED | $396,306.47 |
| Plus Westlaw charges | $ 5,361.29 |
| Subtotal | $401,667.76 |
| LESS corrections made at 8/10/2004 hearing | ($ 2,200.00) |

**REVISED LODESTAR AMOUNT** **$399,467.76**