## NATIONS et ux. v. STONE.

No. 11306—Opinion Filed July 24, 1923.

**1. Contracts — Construction — Payment —Reasonable Time.**

If a debt in fact exists, which has all the essentials, except fixing a definite time of payment, or if payment is made to depend upon a contingency, which does not happen, the law requires payment to be made within a reasonable time.

**2. Appeal and Error—Questions of Fact— General Finding—Conclusiveness.**

Where a jury is waived and the case is tried to the court, and the finding of the court is general, such finding is a finding of every substantial thing necessary to sustain the general finding, and such finding, when reasonably supported by the evidence in the case, is conclusive upon the Supreme Court upon all doubtful and disputed questions of fact so found.

**3. Same — Vendor and Purchaser — Payment—Reasonable Time.**

A contract of sale of real property was entered into by N. with a bank, whereby N. purchased said real property for $4,400 cash, which was to be paid soon, and when N. closed a certain deal he had pending, but which deal was never closed. Held, that said transaction created an existing and personal liability or indebtedness on the part of N., which was required to be paid within a reasonable time; and held, further, that the general finding of the trial court against N. was a finding supported by the evidence, that N. was given a reasonable time to make payment, and such finding of the trial court is conclusive upon the Supreme Court.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Pottawatomie County; Hal Johnson, Judge.

Action by Ella S. Stone against J. L. Nations and Mrs. J. L. Nations. Judgment for plaintiff, and defendants bring error. Affirmed.

Freeling, Hood & Howard, for plaintiffs in error.

Lydick & Arrington, for defendant in error.

Opinion by JARMAN, C. This action was commenced in the district court of Pottawatomie county by Ella S. Stone against J. L. Nations and Mrs. J. L. Nations to recover possession of certain real property located in the city of Shawnee and for damages for the wrongful detention of the same. Judgment was rendered for the plaintiff, and the defendants have appealed.

The plaintiff claims title and the right to possession of said property by virtue of a warranty deed, executed by the National Bank of Commerce, the former owner of said property, to the plaintiff. The defendants claim title to the property and to be entitled to possession thereof by virtue of a contract of sale of said property, entered into by and between the said National Bank of Commerce, hereinafter referred to as the bank, and J. L. Nations, which was prior to the deed executed by the bank to the plaintiff; and it is agreed that the plaintiff purchased the property with knowledge of said contract of sale. The contract of sale relied upon by the defendants consists of certain letters and telegrams. At the time of these transactions, J. L. Nations was at Gotebo, Okla., engaged in the oil business, and his wife, Mrs. J. L. Nations, was at Shawnee. Okla. Negotiations were begun in the early part of 1919 by J. L. Nations with the bank for the purchase of this property. The bank priced the property at $4,400, and Nations offered $4,000 for it, and in a letter written by him to the bank on January 27, 1919, he insisted that the bank ought to let him have the property for less than $4,400, "especially for all cash, as it will be, if I am able to make this deal I have pending here." On March 3, 1919, the bank wrote Nations, "If you close your deal within the next few days, we would be glad to make you a deed for this property for $4,400, provided we have not made a sale in the meantime." On March 26, 1919, Na-

tions sent a telegram to the bank stating: "If you have not sold, wait. Letter follows." And then on April 11, 1919, Nations wrote the bank that he had not closed his deal, but it would go through—that this lease was very valuable on account of a big well that was brought in near his property, and stated. "It will be no trouble to close a deal now," and stated further: "I am going to take the Odell property, as per our agreement, $4,400. Please have the people to move out at the expiration of 30 days, and have my family move in. I think I will have the check there next week; anyway I will not disappoint you in sending check soon." On April 12, 1919, the contract for the sale of the property was closed by the bank writing Nations a letter, advising him that his letter of April 11, 1919, was accepted as a guarantee of the purchase price of the property, "for the consideration of $4,400, to be paid in cash," and advised Nations that the occupants of the property would be notified to surrender possession, so Mrs. Nations could move in. In keeping with the agreement, possession of the property was surrendered to Mrs. Nations.

It is quite clear from the correspondence between these parties that the bank agreed to sell to J. L. Nations this property for a cash consideration of $4,400 which was to be paid by Nations as soon as he closed a certain deal he had pending and which was to be closed and the check for the $4,400 was to be sent to the bank "next week" or "soon", as stated in his letter of April 11, 1919.

Nations did not close his deal and pay the consideration as contemplated in the contract, and on June 28, 1919, over two months after the contract was consummated. Nations wrote the bank, "I had to make a change here in my deal that I first had pending, and in making the change, it has taken more time than I first anticipated"; and stated further that he had sold 1,700 acres of his leases at $5 per acre, making $8,500, and had gotten the money, and that he had sold 1,000 acres at $2.50 per acre and had received $1,400 on this deal and would receive the balance in 20 days; and that he had a deal pending to sell 5,000 acres for $25,000 which would be closed in a few days, and stated that just as soon as this deal was closed he would pay the $4,400 for the property he bought of the bank, and on June 30, 1919, the bank, by letter, agreed to this. After waiting over two months and the consideration not being paid, the bank wrote Nations on Aug-

ust 14, 1919, that he had waited a reasonable length of time and demanded payment of the consideration; and finally on August 27, 1919, the bank notified Nations by letter that unless the $4,400 was paid on or before August 30, 1919, the contract would be considered as ended and possession of the property would be demanded, together with the rental value thereof during the time Nations occupied the same. Nations failed to comply with this request and never paid the consideration for the property, and no further extension of time for the payment thereof was agreed upon by the parties or granted by the bank; and upon the failure of Nations to pay the $4,-400 within the time specified, the bank served notice on Nations for possession of the property and declared the deal between it and Nations at an end, and sold the property to the plaintiff, who subsequently filed this suit. A jury was waived and the case was tried to the court, a judgment was rendered for the plaintiff for possession of the property and for its rental value during the time the defendants had possession thereof, at the rate of $40 per month, being the amount agreed upon by the parties as the rental of said property.

The defendants argue and rely upon three propositions for the reversal of this cause, to wit:

(1) "The evidence, introduced by both parties, established a completed, and enforceable contract whereby the plaintiffs in error bought and took possession of, and the bank sold and delivered the possession of the property in question."

(2) "Time is not the essence of a contract under the laws of Oklahoma, unless expressly stated in the contract."

(3) "If no time is specified for the performance of the act required to be performed, a reasonable time is allowed."

Under the first proposition, the defendants take the position that there was a complete and enforceable contract made and entered into between the parties, whereby the bank sold to the defendants the property in question and placed them in possession thereof, and was to execute to the defendants a deed to said property upon the payment of $4,400, the consideration therefor. which was to be paid when the defendants closed a certain deal they had pending. The defendants contend that by virtue of said contract they own the equitable title to said property and are entitled

to a deed upon the payment of the purchase price; and that an action in ejectment cannot be maintained by the plaintiff.

The contract between the bank and the defendants, which was completed by the letter written by the bank on April 12, 1919, is purely an executory contract, wherein the bank was to execute a deed to said property upon the payment by the defendant of $4,400, the consideration, "next week" or "soon." The defendants defaulted in the payment of the purchase price as agreed upon and, therefore, the plaintiff may maintain an action in ejectment against the defendants. In discussing this proposition, the court, in the case of Lonsdale v. Reinhard, 74 Oklahoma, 176 Pac. 924, held:

"A vendor may maintain an action in ejectment against a vendee in possession under an executory contract of purchase, when the vendee is in default." Talley et al. v. Kingfisher, 24 Okla. 472, 103 Pac. 591.

We will discuss the second and third propositions of the defendants together.

Both of these propositions, as abstract questions of law, are correct, but the difficulty lies in their applicablity to the facts developed in the case. We agree with the defendants that the time of the payment of the purchase price is not the essence of this contract, and, therefore, it is not necessary to discuss this proposition further. The defendants contend that they were to pay for this property as soon as they closed certain pending deals, and, that as the defendants had used due diligence in closing these deals and had failed, said purchase price was not due until said deals were closed, and at most the defendants had not given a reasonable time to close their deals and pay the consideration.

The contract between the bank and the defendants for the sale of said property was closed on April 12, 1919; by the terms of this contract, the defendants at that time became indebted to the bank for $4,-400, the consideration for said property. This was an existing and present liability, but the payment thereof was postponed until the happening of an event, that is, when a certain deal the defendants had pending was closed, which was to be "next week" or "soon." The defendants failed to pay the consideration at the time suggested, and, upon further promises and representations by the defendants, the bank gave them an opportunity to pay said consideration upon the completion of certain other

deals, which were to be closed soon. Under such circumstances, the defendants were required to close their deal and pay the purchase price within a reasonable time.

"If the existence of a debt is conditioned upon the happening of an event, it cannot become enforceable until the event happens, but if a promise is made which constitutes a present liability, and payment is postponed until the happening of an event which does not happen, the law requires payment to be made within a reasonable time." Greenstreet v. Cheatum et al. (Kan.) 161 Pac. 596; Benton v. Benton (Kan.) 97 Pac. 378; Nunez v. Dautel, 22 L. Ed. 161.

The question of whether the defendants were given a reasonable time in which to close their deal and pay the purchase price was submitted to the court, and the general finding of the court in favor of the plaintiff was a finding in favor of the plaintiff that the defendants had been given a reasonable time in which to close their deal and pay the purchase price.

"Where a jury is waived and the cause is tried to a court and the finding of the court is general, such finding is a finding of every substantial thing necessary to sustain the general finding, and such finding, when reasonably supported by the evidence in the case, is conclusive upon the Supreme Court upon all doubtful and disputed questions of fact so found." Elwood Oil & Gas Co. v. Gano, 76 Okla. 287, 185 Pac. 443; Tripp v. Dupree, 60 Okla. 47, 158 Pac. 923.

We cannot say from the record in this case that the finding of the court that the defendants were given a reasonable time in which to close their deal and pay the consideration is not supported by the evidence. We think that the evidence is ample to support this finding, and that the judgment of the lower court in favor of the plaintiff is amply sustained by the record. The judgment of the lower court is, therefore, affirmed.

By the Court: It is so ordered.