**OLIVER'S SPORTS CENTER, INC., a corporation, Appellee,**

v.

**NATIONAL STANDARD INSURANCE COMPANY, Appellant.**

No. 53299.

Supreme Court of Oklahoma.

July 29, 1980.

292

Deaton Gassaway & Davison, Inc. by Austin R. Deaton, Jr., Ada, for appellee.

Green & James by Clarence P. Green, Oklahoma City, for appellant.

HODGES, Justice.

The only issue presented on appeal is the correctness of the trial court in awarding attorney fees pursuant to 36 O.S.Supp.1977 § 3629(B).[1] The insured, Oliver's Sports Center, Inc. [appellee] was awarded $160,-000.00, the total amount of a fire insurance policy, on its business. The jury also awarded $20,000.00 compensatory damages

---

1. It is provided by 36 O.S.Supp.1977 § 3629(B):

"It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss. Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party.

For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party. This provision shall not apply to uninsured motorist coverage."

for the bad faith of the insurer, National Standard Insurance Company [National], [appellant], for denying the claim.

The sporting goods business in Ada, Oklahoma, owned by Oliver's Sports Center, Inc., burned on January 16, 1978. On April 7, 1978, the insured was advised that its proof of loss would be rejected and its claim denied unless there was an agreement to compromise the claim. The insured refused to compromise. The insurer rejected the proof of loss and denied the claim. The insured filed suit to recover on the policy. The insured alleged that: the insurer had refused in bad faith to honor its contractual obligation; the refusal was wilful and malicious without just cause or reason, caused the insured to suffer financial losses, and destroyed all prospects for the resumption of its business. An award of attorney's fee under 36 O.S.Supp.1977 § 3629(B) was also requested because of the appellant's failure to submit a written offer of settlement. After the jury verdict, the trial court con-

ducted a hearing to determine a reasonable attorney's fee pursuant to § 3629(B).

The trial court awarded attorney fees in the amount of $60,000.00 because of the failure of the insurer to submit a written offer of settlement as required by the statute.

## I

The insurer asserts the court awarded attorney fees by calculating the amount normally derived from a contingent fee contract. It is contended where the court has the duty to set a reasonable attorney fee many factors must be considered, and it is unreasonable to base the award solely on customary contingent fee contracts. The insured counters by arguing that the $60,000 fee was a reasonable and proper fee; that it was determined on a variety of criteria; and that the fee was not based merely on a contingent fee calculation.[2]

---

**2.** The insured cites the remarks of the trial court:

"THE COURT: Four years ago, in considering proposed rules of this Court, I looked into this area. These rules were never published or adopted, but I looked for the best authority that I could find in the area of attorney's fees and I really can't give you the case where this statement came from, which I thought was the best I could find, but it was a New York decision, if I can recall properly. All I have is the proposed draft that we were preparing, not the case itself, but the proposed rule, which I have always considered the touch stone that I use is, as follows: 'The amount of attorneys' fees in civil cases, excluding small claims actions, shall be determined by the following factors; time and labor required, the difficulty of the questions involved and the skill required to handle the problems presented, the experience, ability and reputation of the attorney, the amount involved, benefit—and benefit resulting to the client from the services of the attorney, the customary fee charged by the local bar for similar cases and the contingency or certainty of compensation, the results obtained and the responsibility involved.'

"So, all those factors going together are to be considered in setting a fee. Of course, as the judge who presided over the trial, I recognized that it took a great deal of skill in the presentation of the case because of the expertise of the witnesses and the very difficulty of the subject matter about which they

were testifying. In my own mind I decided that I—there were few attorneys that I knew of who would have had that amount of skill to present the case as it was presented, and decided that the outcome was directly related to the amount of preparation and skill involved in the presentation of the case. To be honest, that was my feeling. And another thing that I observed about the case and thought was a plus for the Plaintiff was the fact that we were dealing with a new law, the fact that this contingency claim was presented based upon the newness of the law, being a 1978 decision, as I recall, I feel that most attorneys, or many attorneys would have not even known that the relief could have been presented and that recovery could have been sought in that area. So, those are some of the things. That's the rule that I always use, even though it's never been published. I think it's better said than any that I've ever seen, and those are some things that I observed about the trial. So, with that, that might help you in presenting your argument."

The order entered by the court also recites the factors considered by the court before it determined the amount of a reasonable fee:

"After having heard and considered the testimony of attorneys of the Pontotoc County Bar Association offered by both the Plaintiff and the Defendant relating to the question of reasonable attorney's fees for services rendered by the Plaintiff's attorneys herein, and being fully advised concerning the nature of

The insurer's primary thrust is that it was the attorney's testimony that he spent 345.5 hours on the case which reflects an hourly rate of $173.66. It is contended that the hourly rate should have been from $60.00 to $76.00 per hour which would have resulted in a fee of from $20,730.00 to $25,912.50. There is no argument or dispute raised by the insurer concerning the time spent by the insured's attorney.

■ The general agreement in all jurisdictions is that the time and labor spent by the attorney in performing services for which compensation is sought is an important factor to be considered in setting a reasonable fee. However, it is also commonly agreed that the time element must be considered in connection with other factors. Fees cannot fairly be awarded on the basis of time alone. The use of time as the sole criterion is of dubious value because economy of time could cease to be a virtue;

and inexperience, inefficiency, and incompetence may be rewarded to the detriment of expeditious disposition of litigation.[3] The litigation risk factor must be considered. Although the court initially looks to the hourly rate for comparable representation where compensation is guaranteed, it must adjust the basic hourly rate where compensation is contingent by assessing the likelihood of success at the outset of the representation.[4]

■ The criteria for the awarding of a reasonable attorney's fee in the absence of a contract or a statute fixing the amount were clearly delineated in *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659, 661 (Okl.1979).[5] This Court held that the proper procedure to be followed by trial courts in establishing a reasonable attorney fee is to determine the hourly compensation on an hourly rate basis and to add an addi-

---

the Plaintiff's action, the difficulties encountered in the preparation and trial of the suit, the complexities of the issues involved and other relevant matters, the Court finds that a reasonable fee for the services of the Plaintiff's attorneys in this action is Sixty Thousand Dollars ($60,000). The Court further finds that this fee is for services of the Plaintiff's attorneys to this date and is not intended to include services in the event of an appeal of this case to the Oklahoma Supreme Court. An additional fee for services by the Plaintiff's attorneys in any appeal proceedings will be fixed by this Court at a later date upon timely application."

3. See Annot., "Amount of Attorneys' Compensation In Absence Of Contract Or Statute Fixing Amount," 57 A.L.R.3d 475 (1974) for cited cases. See also Hornstein, "Legal Therapeutics: The Salvage Factor In Counsel Fee Awards," 69 Harv.L.Rev. 658 (1956).

4. The litigation risk factor is ably discussed in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2nd Cir. 1974); See also Berger, "Court Awarded Attorney Fees; What Is Reasonable?" 126 U.Pa.L.Rev. 281, 325 (Dec. 1977). Berger reduces the determination of reasonable attorney fees to be set by the trial court to three essentially factual questions which can be reviewed by appellate courts as well as by lawyers and litigants:

1) How much time did the attorneys justifiably expend on the lawsuit?

2) What is the hourly market rate of the particular lawyer for similar legal services? If the particular attorney has no such market rate for these services, what is the rate for lawyers in the community with similar experience, background, skill and reputation who handle cases of similar magnitude and complexity?

3) What was the risk of non-recovery at the outset of the litigation?

5. See also 5 O.S.1971 Ch. 1, App. 3, DR. 2–106 which lists the guidelines as:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

"(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

"(3) The fee customarily charged in the locality for similar legal services.

"(4) The amount involved and the results obtained.

"(5) The time limitations imposed by the client or by the circumstances.

"(6) The nature and length of the professional relationship with the client.

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

"(8) Whether the fee is fixed or contingent."

tional amount based on the following guidelines.[6]

"1. Time and labor required.

2. The novelty and difficulty of the questions.

3. The skill requisite to perform the legal service properly.

4. The preclusion of other employment by the attorney due to acceptance of the case.

5. The customary fee.

6. Whether the fee is fixed or contingent.

7. Time limitations imposed by the client or the circumstances.

8. The amount involved and the results obtained.

9. The experience, reputation and ability of the attorneys.

10. The 'undesirability' of the case. [i. e. risk of non-recovery]

11. The nature and length of the professional relationship with the client.

12. Awards in similar cases."

In *Burk*, this Court established that after the date of promulgation, January 24, 1979, attorneys would be required to present detailed time records to the court and to offer evidence of the reasonable value for the services performed, predicated on the standards within the local legal community.

Although the trial court did not follow the rationale of *National Ass'n. of Reg. Med. Prog., Inc. v. Weinberger*, 396 F.Supp. 842 (D.C.1975),[7] cited in the *Burk* opinion, which requires the computations of a strict hourly fee, we find that under the law as it existed at the time of the hearing on January 9, 1979, the court properly exercised its discretion when it considered various factors in arriving at the amount of attorney fee.[8]

The jury found the insurer to have substantially breached its duty to deal fairly and reasonably with the insured or to act in good faith in handling the claim. The time and effort required to properly prepare for and try this case and to obtain and present the difficult and technical evidence and testimony is reflected by the numerous depositions, interrogatories, involved legal questions and pleadings reflected in the record. The transcript of the evidence offered at the hearing to determine the amount of the attorney's fee to be awarded to the insured's attorney reveals that these facts were known by the two attorneys who testified for the insured; and that the trial judge who entered the order determining the fee was aware of the difficulties and complexities of the case, as well as the amount of time involved. We, therefore, find no error of the court in setting the fee.

AFFIRMED.

All the Justices concur.

OPALA, Justice, concurring:

In an action against the insurer to recover for loss by fire the jury's verdict in favor of the insured was for $160,000.00, the maximum coverage under the policy, and for $20,000.00 in damages for bad-faith denial of the claim. In a post-verdict proceeding before the judge sitting without a jury the insured was allowed—under 36 O.S.Supp. 1977 § 3629B—an additional recovery in

---

6. These guidelines were initially promulgated by *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) and adopted in *Evans v. Sheraton Park Hotel*, 164 U.S.App. D.C. 86, 96, 503 F.2d 177, 187 (1974).

7. In *Weinberger*, the court said:
"The court will analyze the first type of work involved in the case and the number of hours expended by [the attorney] on various efforts. The court then will consider the proper hourly fee to be charged for this work. After arriving at a strict hourly figure, the court then will consider what amount, if any, should be added to the petitioner's compensation, based particularly on the contingent nature of this litigation, the benefits conferred on plaintiff class, the service rendered to the public, the difficulty of the issues involved and petitioner's skill in dealing with them, and the other factors set forth by the Court of Appeals in *Evans v. Sheraton Park Hotel, supra*."

8. See note 2, supra.

counsel fees of $60,000.00. The appeal seeks corrective relief from the judge's allowance of counsel fees. The record presented for review does not include a transcript of trial proceedings which culminated in the jury verdict. *The intensity of the forensic combat waged between these adversaries in pre-verdict stages is almost totally obscured from our judicial view.*

The statute under which recovery of counsel fee was effected—36 O.S.Supp.1977 § 3629B—(a) provides that upon a judgment in favor of the "prevailing party" in an action to collect upon a rejected proof-of-loss claim "costs and attorney fees shall be allowable" and (b) defines the term "prevailing party".

Whenever in a common-law action triable to a jury the statute authorizes counsel fee to be awarded to the prevailing party, either as an additional element of recoverable damage or as a taxable item of costs, the amount of the fee so to be allowed is a question of fact for submission to the trier in the same manner as any other fact arising in the case.[1] This principle, first announced by the Kansas court in *Merrill*,[2] was expressly adopted by this court in *Holland Banking Co. v. Dicks*.[3] It governs here. The counsel-fee issue was one for the jury. Since by its voluntary submission to the court, the parties—either as a conscious strategy choice or otherwise—waived their right to trial by jury, the case stands before us for review by the standards applicable to common-law proceedings in error.[4]

Whenever a jury is waived and a cause, or an issue, is tried to the court, the trial court's resolution of facts has the very same force and effect as that which is to be accorded a verdict of a properly-instructed jury. If the resolution is effected by a general finding, that finding will be deemed to comprise within it a favorable decision upon all the essential elements necessary to support it. *The trial judge's verdict so rendered, which is conclusive in law upon the Supreme Court with respect to all disputed issues of fact* resolved in the case, may not be disturbed on review if there is any competent evidence which reasonably tends to support it.[5]

The verdict upon the amount of counsel fee is not without support in competent evidence. It is also free from error of law as it was presumably rendered by a properly-instructed jury. The standard by which to gauge the correctness of the decision is neither "abuse of discretion" nor "reasonableness". The verdict must stand or fall on whether it is "excessive" or supported by competent evidence. No one contends that there is an absence of competent proof to justify the judge's verdict. Rather, the argument, as I divine it, is that the verdict is "excessive" because the judge applied impermissible private-contract standards as distinguished from the more objective fair-market value of legal services.

The record does not demonstrate clearly that private-contract standards governed the judge's decision. I am hence obliged to test the "excessiveness" of the verdict by common-law standards. It is so "flagrantly outrageous and extravagant as to clearly show passion, partiality, prejudice or corruption"?[6] An affirmative answer to the question so posed would not be legally correct in view of the careful findings and the evidence adduced.

1. 12 O.S.1971 § 556; *Missouri Pac. Ry. Co. v. Merrill*, 40 Kan. 404, 19 P. 793 [1888].

2. Supra note 1.

3. 67 Okl. 228, 170 P. 253, 256 [1918].

4. 12 O.S.1971 § 591; *First State Bank of Noble v. McKiddy*, 206 Okl. 57, 240 P.2d 1103 [1952]; *Kansas, O. & G. Ry. Co. v. Searcy*, 206 Okl. 1, 240 P.2d 440 [1952]; *Givens v. Western Paving Co.*, Okl., 261 P.2d 450 [1953]; *Davis v. Pumpco, Inc.*, Okl.App., 519 P.2d 557 [1974].

5. *Elwood Oil & Gas Co. v. Gano*, 76 Okl. 287, 185 P. 443 [1919]; *Nations v. Stone*, 92 Okl. 18, 217 P. 1031 [1923]; *Young v. Seely*, Okl., 366 P.2d 951, 953 [1961]; *Wattie Wolfe Co. v. Superior Contractors, Inc.*, Okl., 417 P.2d 302 [1966]; *Pracht v. Oklahoma State Bank*, Okl., 592 P.2d 976 [1979]. See also, *Spiller v. Massey & Moore*, Okl., 406 P.2d 467, 471 [1965].

6. *Marland Refining Co. v. Harrel*, 167 Okl. 548, 31 P.2d 121 [1934].

I am hence powerless to re-examine the decision regardless of what my personal judgment may be with respect to the size of the award made. Were I sitting as a lone chancellor in trial or in review of an equity decree, I would subject the facts to careful scrutiny or re-examination, as the case may be. I might arrive at some other figure, but here the applicable law does not authorize me to stretch the scope of affordable review as far as needed to give the insurer the relief it seeks.

The credibility of proof that was adduced before the trial judge is not subject to re-appraisal on appeal. Nor can this court re-weigh the evidence to determine *de novo* where the preponderance may lie. The trial judge's decision rests on competent evidence. Gauged by the applicable common-law standards of review, the amount awarded is not excessive. Because I am powerless to readjudicate the fact issues in the case and the decision under consideration *is the functional equivalent of a legally unassailable jury verdict*, I join in affirming the order allowing counsel fees.