OSCN Found Document:STRACK v. CONTINENTAL RESOURCES

 

 
 

 
 STRACK v. CONTINENTAL RESOURCES
2021 OK 21
Case Number: 117276
Decided: 04/20/2021
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 21, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

MARK STEPHEN STRACK, Sole Successor Trustee of the PATRICIA ANN STRACK REVOCABLE TRUST DTD 2/15/99 and the BILLY JOE STRACK REVOCABLE TRUST DTD 2/15/99, and DANIELA A. RENNER, Sole Successor Trustee of the PAUL ARIOLA LIVING TRUST and the HAZEL ARIOLA LIVING TRUST, for Themselves and All Others Similarly Situated, Plaintiffs/Appellees,
v.
CONTINENTAL RESOURCES, INC., Defendant,
and
DANIEL M. MCCLURE, Objector/Appellant.

ON CERTIORARI FROM THE COURT OF CIVIL APPEALS, DIVISION I

Â¶0 Objector Daniel McClure appealed a $19 million attorney fee award and a $400,000 incentive award in a class action suit. The district court calculated the attorney fee amount using the percentage-of-common-fund method pursuant to a contingency fee agreement between the class counsel and class representatives. The Court of Civil Appeals reversed the district court's awards, holding (1) an attorney fee request in a common fund case is subject to the lodestar method, (2) the district court failed to properly calculate the attorney fee award under the lodestar method, and (3) the district court abused its discretion in awarding the incentive award to the class representatives. This Court granted certiorari. We hold that although Oklahoma's class action attorney fee statute gives courts flexibility and discretion in calculating fee awards under the percentage-of-common-fund method, the district court abused its discretion when it awarded an unreasonable attorney fee award and an incentive award not supported by evidence.

COURT OF CIVIL APPEALS' OPINION VACATED;

REVERSED AND REMANDED

Douglas E. Burns and Terry L. Stowers, Burns & Stowers, P.C., Norman, Oklahoma, for Plaintiffs/Appellees.

Kerry W. Caywood and Angela Caywood Jones, Park, Nelson, Caywood, Jones, LLP, Chickasha, Oklahoma, for Plaintiffs/Appellees.

Harvey D. Ellis, Crowe & Dunlevy, Oklahoma City, Oklahoma, for Objector/Appellant.

Daniel McClure, Objector/Appellant, Houston, Texas.

Winchester, J.

Â¶1 The three questions before this Court are (1) whether Oklahoma's class action attorney fee statute, 12 O.S.Supp.2017, Â§ 2023(G), allows for the percentage-of-common-fund method in calculating attorney fees, (2) whether the district court abused its discretion in awarding 40% of the common fund to class counsel, equaling over $19 million in attorney fees and a $2,500 hourly rate, and (3) whether the district court abused its discretion in awarding a $400,000 incentive award to the named class representatives. We answer these questions in the affirmative.

Â¶2 Oklahoma's class action attorney fee statute gives courts flexibility and discretion in calculating fee awards under the lodestar method or the percentage-of-common-fund method (percentage method). The named class representatives in this case requested attorney's fees per a signed contingency fee contract wherein they agreed that class counsel would receive 40% from the common fund. The class representatives entered into this contingency fee agreement on behalf of a potential class of 33,890 Oklahoma royalty owners. Class counsel contends that this type of agreement is customary in these types of cases. However, the class representatives and class counsel must act in a fiduciary relationship on behalf of the silent class members in a class action. Oklahoma's class action attorney fee statute places the district court also in a fiduciary role to the class when awarding fees. See 12 O.S.Supp.2017, Â§ 2023(G)(4)(b). In granting attorney's fees and incentive awards in this case, the district court failed to consider this role to the royalty owners whose mineral interests are at the heart of this litigation and to ensure that not only class counsel but also the royalty owners benefited from this litigation.

Â¶3 The district court abused its discretion when it calculated attorney's fees under the percentage method, awarding fees that totaled more than 300% of the actual hours worked and equaled a $2,500 hourly rate. The district court also abused its discretion in granting an incentive award not based on evidence of the actual work performed by the class representatives in this case.

FACTS AND PROCEDURE 

Â¶4 Class Representatives--Billy J. Strack, as trustee for the Patricia Ann Strack Revocable Trust Dated 2/15/99 and the Billy Joe Strack Revocable Trust Dated 2/15/99, and Hazel Ariola, as trustee of the Paul Ariola Living Trust and the Hazel Ariola Living Trust--filed this action against Continental Resources, Inc. for underpayment of oil and gas royalties.[1] They sued on behalf of themselves and sought to certify a class of 33,890 Oklahoma royalty owners. Litigation lasted for over seven years without a trial until the parties entered into a settlement agreement.[2] The district court approved the settlement agreement, requiring Continental to pay $49,800,000 into a common fund for Period 1 claims, plus an estimated $7,500,000 for Period 2 claims. The settlement further provided for an estimated $50,000,000 for claims during the Future Production Period.[3]

Â¶5 Class Representatives filed a motion for attorney's fees pursuant to 12 O.S.Supp.2017, Â§ 2023(G), and requested a $400,000 incentive award to Class Representatives from the common fund. Class Representatives requested attorney's fees per a signed contingency fee contract wherein Representatives agreed that class counsel would receive 40% of the gross recovery from the common fund.

Â¶6 Class Representatives asserted that using the lodestar method to calculate attorney's fees from Burk v. City of Oklahoma City, 1979 OK 115, 598 P.2d 659, was not required in a common fund case. In the alternative, Class Representatives contended a lodestar calculation would yield approximately the same result as the requested 40% of the common fund; the calculation of attorney's fees under the lodestar method would be $6,288,831 with an enhancement of 317% yielding approximately the same result as 40% of the common fund for the Period 1 claims, or $19,920,000.

Â¶7 Class Representatives did not present detailed time records as part of their motion for attorney's fees. Instead, Class Representatives submitted the time records to the district court for an in camera review. Daniel McClure,[4] a class member with a small mineral interest, objected to Class Representatives' requested attorney's fees and incentive award, arguing both requests were excessive and not consistent with Oklahoma law. McClure as a royalty owner also requested copies of his own counsel's time records. Class Representatives provided 190 pages of billing records with nearly every description of the services rendered by class counsel redacted, asserting the information was protected by the attorney-client privilege, the work-product doctrine, and class counsel's mental impressions and litigation strategy. The district court would not allow McClure access to the detailed billing records thereby depriving a client--standing in the shoes of the other 33,890 royalty owners--to see what his own attorneys charged him.

Â¶8 The district court held an evidentiary hearing pursuant to 12 O.S.Supp.2017, Â§ 2023(G)(4)(a);[5] awarded attorney's fees from the common fund in the amount of $19,920,000, representing 40% of the settlement payment for the Period 1 claims; and awarded an additional 40% of the eventual settlement payment for Period 2 claims. The district court also granted a $400,000 incentive award to Class Representatives, amounting to $200,000 to each trustee.

Â¶9 McClure appealed. The Court of Civil Appeals (COCA) reversed the district court's attorney fee award, reasoning the express mandates of Burk were not met. COCA concluded that an attorney fee request in a common fund case is subject to the lodestar methodology even if a contingency fee agreement with class representatives exists. COCA further determined that the district court had not completed a proper lodestar analysis and held an enhancement of 317% was not based on the statutory criteria under 12 O.S.Supp.2017, Â§ 2023(G)(4)(e). COCA also reversed the amount of the incentive award to Class Representatives, reasoning the district court abused its discretion when it set the award amount. Class Representatives sought certiorari, and this Court granted.

STANDARD OF REVIEW

Â¶10 The reasonableness of attorney's fees and incentive awards depends on the facts and circumstances of each case and is a question for the trier of fact. The standard of review for considering the district court's award is an abuse of discretion. Hess v. Volkswagen of Am., Inc., 2014 OK 111, Â¶ 9, 341 P.3d 662, 666. As a general matter, an abuse of discretion review standard includes an appellate examination of both fact and law issues; an abuse occurs when a court bases its ruling on an erroneous legal conclusion or there is no rational basis in the evidence for the decision. Christian v. Gray, 2003 OK 10, Â¶ 43, 65 P.3d 591, 608.

Â¶11 The issues in this appeal also concern the district court's legal interpretation of Oklahoma's class action attorney fee statute, 12 O.S.Supp.2017, Â§ 2023(G). Statutory construction poses a question of law; the correct standard of review is de novo. State ex rel. Prot. Health Servs. State Dep't of Health v. Vaughn, 2009 OK 61, Â¶ 9, 222 P.3d 1058, 1064. Under the de novo standard of review, the Court has plenary, independent, and non-deferential authority to determine whether the district court erred in its legal rulings. Id.

DISCUSSION 

Â¶12 Oklahoma's class action statutory scheme provides attorney's fees for class counsel. We turn to the three questions before the Court: (1) whether a court can award attorney's fees under the percentage method; (2) whether the district court's attorney fee award was an abuse of discretion; and (3) whether the district court's incentive award was an abuse of discretion. And we answer yes to these questions. Oklahoma's class action statutory scheme gives courts a liberal framework in calculating and awarding fees, mandating that the award be reasonable. The attorney fee award here is unreasonable and an abuse of discretion. Similarly, the district court's incentive award is an abuse of discretion as it is not supported by evidence.

I. Oklahoma's class action attorney fee statute allows for the percentage method for calculating attorney fees. 

Â¶13 Historically, Oklahoma courts have used two primary methods for calculating attorney's fees: the lodestar method and the percentage method, e.g., a contingency fee arrangement. See, e.g., Burk, 1979 OK 115, Â¶ 10, 598 P.2d at 661; State ex rel. Bd. of Comm'rs of Harmon Cty. v. Okla. Tax Comm'n, 1944 OK 250, Â¶ 4, 151 P.2d 797, 798. The lodestar method for calculating fees is to 1) determine the compensation based on the hours spent multiplied by an hourly rate, and 2) enhance or decrease the fee through consideration of the factors outlined in Burk, 1979 OK 115, Â¶ 8, 598 P.2d at 661. See Spencer v. Okla. Gas & Elec. Co., 2007 OK 76, Â¶ 13, 171 P.3d 890, 895.

Â¶14 The percentage method allows attorney's fees to come from the proceeds of a fund. When an action creates a common fund recovery, all the beneficiaries of the fund contribute to paying the attorneys who worked on their behalf by allowing counsel to take a percentage of the common fund. See, e.g., State ex rel. Bd. of Comm'rs of Harmon Cty., 1944 OK 250, Â¶ 4, 151 P.2d at 798; Kellough v. Taylor, 1941 OK 320, Â¶ 0, 119 P.2d 556, 556 (Syllabus by the Court No. 1).[6]

Â¶15 Class Representatives in this case requested a fee award using the percentage method based on the contingency fee agreement between class counsel and Class Representatives, amounting to an award of 40% of the common fund. Oklahomans have the right to negotiate a contract with their chosen counsel and to engage counsel on a contingent percentage fee basis. 5 O.S.2011, Â§ 7. For many Oklahomans and in many areas of the law, contingent fee agreements may be the only means possible to secure legal services. See, e.g., Sneed v. Sneed, 1984 OK 22, Â¶ 3, 681 P.2d 754, 756. However, in the class action context, class counsel and Class Representatives are obligated to act in the best interests of the silent class members when entering into any such agreement, ensuring that any attorney fee award is fair to all parties. Many times, the smaller mineral interest owners do not have the financial resources to challenge an attorney fee award in these cases.

Â¶16 Oklahoma's class action statute provides the methods to calculate attorney's fees in class actions. To ascertain those methods, we examine Oklahoma's class action attorney fee statute, 12 O.S.Supp.2017, Â§ 2023(G), for its legislative intent through the "plain and ordinary meaning" of the statutory language. In re Initiative Petition No. 397, 2014 OK 23, Â¶ 9, 326 P.3d 496, 501. Because the Legislature expresses its purpose by words, the plain meaning of a statute is deemed to express legislative authorial intent in the absence of any ambiguous or conflicting language. Id. We hold that the plain language of Oklahoma's class action attorney fee statute allows for the calculation of attorney's fees under both the percentage and lodestar methods. Section 2023(G)(1) states that a court may award reasonable attorney fees and nontaxable costs that are authorized by law or by the parties' agreement.[7] However, Â§ 2023(G)(1) does not specify any particular methodology in calculating a fee award. The statute instead sets out factors that a court shall consider to assess the reasonableness of attorney's fees. 12 O.S.Supp.2017, Â§ 2023(G)(4)(e).[8]

Â¶17 The factors outlined in Â§ 2023(G)(4)(e) make both the lodestar and percentage method potentially permissible. For instance, the statute instructs the court to consider the amount of time required by the case, the difficulty of the questions involved, the skill necessary, and the preclusion of other employment. Actual time spent (one of the two components of the lodestar method) is relevant to assessing the time-required, difficulty-involved, and employment-preclusion factors. At the same time, the statute looks to the amount in controversy and the results obtained, which the percentage approach more directly measures. The statute further considers whether the fee is fixed or contingent. We therefore conclude that the statute, although not mandating either a lodestar or percentage methodology, does not foreclose either. Instead, the statute suggests that either or both the lodestar and percentage methods of fee calculation are appropriate, depending on which methodology best arrives at a reasonable award given the circumstances of the particular case.[9]

Â¶18 The goal in every attorney fee case is not to select a methodology but to arrive at a reasonable fee. Gottlieb v. Barry, 43 F.3d 474, 482 (10th Cir. 1994) ("Under either methodology, the fee award must be reasonable."). A reasonable fee is also the explicit mandate of Rule 1.5(a) of the Oklahoma Rules of Professional Conduct: a lawyer must not collect an unreasonable fee. 5 O.S.2011, ch. 1, app. 3-A. Both attorney fee methods can have their shortcomings in arriving at a reasonable fee. While a percentage computation can lead to an excessive award out of proportion with the attorney's time and labor, a lodestar computation can lead to an excessive award out of proportion with the results in the case. See Hess, 2014 OK 111, Â¶ 3, 341 P.3d at 672 (Taylor, J., concurring). As a result, courts should ensure the reasonableness of the fee award involving a common fund by comparing the fee based on a percentage calculation to what the lodestar approach would produce. See generally 1 Alba Conte, Attorney Fee Awards Â§ 2:6, at 69, 78 (3d ed. 2004) (describing tandem use of lodestar and percentage approaches as cross-check on reasonable fee); 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions Â§ 13:80, at 496-97 (4th ed. 2002) (explaining that state and federal courts often use a hybrid approach to cross-check reasonableness of fee award). Regardless of the methodology used, a detailed comparison of the results of each method can avoid the pitfalls in each method.

Â¶19 We conclude that both the lodestar method and the percentage method are valuable to determine attorney's fees under Oklahoma's class action statute. A court's goal in deciding attorney fee awards is to award a reasonable fee, and a court should compare the results of both methods to ensure it is awarding a reasonable fee in a common fund class action.

II. The district court abused its discretion in awarding 40% of the common fund.

Â¶20 The second issue before this Court is whether the district court's attorney fee award is reasonable. We do not answer this question as determined by either method. Instead, we find the district court's fee award is unreasonable based on the actual percentage used to calculate the award.

Â¶21 The fact that class counsel and Class Representatives entered into a contingency fee agreement to recover 40% of the common fund does not automatically guarantee such award; this Court has refused to enforce contingent fee arrangements when the amount of the fee was excessive. See, e.g., Sneed, 1984 OK 22, Â¶ 3, 681 P.2d at 756; Abel v. Tisdale, 1980 OK 161, Â¶ 16, 612 P.2d 608, 611. In this case, an award of 40% of the common fund is excessive when compared to (1) the average percentage used in reported cases, and (2) the amount owed to class counsel for the actual time spent under the lodestar calculation.

Â¶22 Although a 40% contingency fee payment in individual litigation may be normal, such an award in class actions can be excessive. Class actions generally benefit from significant economies of scale and generate proportionately larger common funds than do individually litigated cases. Conte, supra, Â§Â§ 1:9, 2:7, at 27, 104. As a result, courts frequently reduce the percentage of the common fund awarded as attorney's fees below that which would be awarded in individual litigation. Id. Â§ 2:7, at 104. For example, the attorney's fees awarded in complex class actions are normally 20% to 30% of the recovered fund, with deviations from that range when the fund is extraordinarily large or small relative to the hours of work expended by the attorneys. Id. Â§ 2:8, at 106-14; see also Brown v. Phillips Petroleum Co., 838 F.2d 451, 455 (10th Cir. 1988) (holding that a review of other federal common fund cases demonstrates that a 16.5% fee award is within the range of awards deemed reasonable by other courts); Conte & Newberg, supra, Â§ 14:6, at 550 (stating that the usual fee range for securities and antitrust litigation is 20% to 30%). We determine that an award of 40% of the common fund in this case is excessive in comparison to the average percentage--20% to 30%--used in reported cases involving class action litigation. Instead, using an average percentage, like 25% of the common fund, would yield an attorney fee award of $12,450,000, compared to the $19,920,000 awarded in this case.

Â¶23 Likewise, the fee award is particularly excessive when compared to the amount that class counsel would receive under the lodestar calculation. As outlined in the table below, the district court awarded class counsel $19,920,000 in attorney's fees for Period 1 claims, which amounts to a rate of $2,500 per hour. We note this award does not include the district court's other award of 40% of the eventual settlement for Period 2 claims, which will amount to an estimated award of $3,000,000 to class counsel. Under the lodestar method, class counsel would have received $6,288,831 without an enhancement, which is an average of $790 per hour.[10] More importantly, each class member's recovery is more minuscule under the percentage method: an award of $1,022 per class member under the percentage method and an award of $1,495 per class member under the lodestar method.

 
 
 
 Percentage Based on Contingency Fee Contract
 
 
 
 
 40% of $49.8 million Common Fund
 
 
 $19,920,000.00
 
 
 
 
 7,961 hours billed
 
 
 $2,500 average hourly rate
 
 
 
 
 Class Representative Award
 
 
 $400,000.00
 
 
 
 
 Opt-in class members' recovery
 
 
 $1,022 per class member[11]
 
 
 
 
 Lodestar Method
 
 
 Â 
 
 
 
 
 7,961 x $875/$500/$275/$200 hourly rate
 
 
 $6,288,831.00
 
 
 
 
 Class Representative Award
 
 
 $400,000.00
 
 
 
 
 Opt-in class members' recovery
 
 
 $1,495 per class member
 
 
 

Â¶24 Our guidepost in this analysis is the reasonableness of the attorney fee award. U.S. Supreme Court Justice Sandra Day O'Connor warned against approving fee agreements without inquiring into a rational relationship between the fee and the recovery. Int'l Precious Metals Corp. v. Waters, 530 U.S. 1223, 1224 (2000) (O'Connor, J., statement concerning denial of cert.). Such agreements allow, as in this case, nominal distributions to the class because the value of each class member's individual claim is small compared to the transaction costs in obtaining recovery. Id. We similarly have emphasized the importance of this relationship and warned against nominal recoveries when paid out to the entire class. Hess, 2014 OK 111, Â¶ 35, 341 P.3d at 670. In this case, the amount of the attorney fee award is excessive in relation to the actual work performed by class counsel and the recovery of each class member. We conclude the district court abused its discretion when it awarded 40% of the common fund to class counsel and reverse the attorney fee award.

III. The district court abused its discretion in awarding a 317% enhancement to the lodestar calculation.

Â¶25 The lodestar method may be more suitable in cases like this one where the percentage method based on class counsel's contingency agreement produces an excessive fee award. Although the district court calculated fees under the lodestar method, it added a 317% enhancement to total approximately what the court awarded under the percentage method. The district court again abused its discretion when it granted a 317% enhancement (3.17 multiplier) to the lodestar method.

Â¶26 This Court has held there is a strong presumption that the lodestar method alone will reflect a reasonable attorney fee. Hess, 2014 OK 111, Â¶ 39, 341 P.3d at 671. An adjustment to a lodestar calculation is normally determined by a multiplier, showing the mathematical relationship between the value of the services rendered and the fee award. A multiplier may increase or decrease a lodestar calculation. Id. Â¶ 36, 341 P.3d at 670; see also Arkoma Gas Co. v. Otis Eng'g Corp., 1993 OK 27, 849 P.2d 392 (holding the attorney fee award excessive in relation to the result achieved by the plaintiff and reducing the lodestar fee). Even in those instances that warrant an enhancement to a lodestar calculation, our Court has been modest. In using the lodestar method, we rarely permit a multiplier above 1.5. See Hess, 2014 OK 111, Â¶ 39, 341 P.3d at 671 (holding trial court's 1.9 multiplier was an abuse of discretion); Spencer, 2007 OK 76, Â¶ 27, 171 P.3d at 898 (awarding 10% incentive fee, a 1.1 multiplier); Burk, 1979 OK 115, Â¶ 17, 598 P.2d at 662 (awarding 40% incentive fee, a 1.4 multiplier).

Â¶27 The Court in Burk awarded an enhancement multiplier after considering factors almost identical to those in Oklahoma's class action attorney fee statute. The Court specifically noted that the attorneys faced a low probability of success at the time they commenced the action and a high contingency. The Court further recognized it was an unpopular case, unique, and proved difficult. The attorneys studiously prepared for trial and filed multiple briefs, which reflected considerable research. Burk, 1979 OK 115, Â¶Â¶ 15-16, 598 P.2d at 662. Most importantly, the Court found that the attorneys met almost every factor (now adopted in Â§ 2023(G)(4)(e)), but the Court awarded only an adjustment of 40% of total hourly compensation, or a 1.4 multiplier. To justify an upward increase in the award, the Burk court explained that the district court should set forth with specificity the facts and computation to support its award as the value placed on additional factors will differ in each case. The Court also affirmed that the value to be given for an upward adjustment should bear a reasonable relationship to the aggregate hourly compensation. Id. Â¶ 22, 598 P.2d at 663.

Â¶28 In this case, the district court identified a few of the Â§ 2023(G)(4)(e) factors in its award, including that the case was complex, involved novel and difficult questions of law, and required counsel with substantial experience in oil and gas royalty actions. Yet a district court must examine the evidentiary support for these factors beyond a cursory glance. When class counsel filed this case in 2010, this type of class action was highly desirable. Class counsel submitted a compilation of 56 Oklahoma royalty underpayment class actions and acknowledged that these cases had similar claims to those in this case. Further, the novelty and complexity of the issues appear to be fully reflected in the number of billable hours recorded by class counsel. And while the district court found that this case prevented class counsel from spending time on other matters, four attorneys and two paralegals expended 7,961 hours over a period of seven years of litigation.

Â¶29 The district court's order incorporated expert witness testimony who compared the lodestar calculation and the 40% of common fund calculation by stating: "the resulting lodestar multiplier using that [percentage calculation] would be 3.17." This conclusory statement by the district court to support the fee award does not withstand scrutiny. A mere conclusory statement from an expert witness cannot support a 317% enhancement.

Â¶30 There is no basis in law or the facts before us to allow a 317% enhancement to the lodestar calculation. Merely referring to the enhancement factors to be considered under Â§ 2023(G)(4)(e) will not sustain a fee that is not established by evidence. Spencer, 2007 OK 76, Â¶ 15, 171 P.3d at 896. The majority of the enhancement factors that the district court addressed in this case were also addressed by the Burk Court, who only awarded a 40% enhancement (1.4 multiplier). See Burk, 1979 OK 115, Â¶ 17, 598 P.2d at 662. In this case, a lodestar calculation with a more moderate multiplier of 1.5 would yield an attorney fee award of approximately $9,400,000. If the evidence supported an even larger multiplier of 2.0, the attorney fee award would be $12,500,000, which is comparable to an award of 25% of the common fund.

Â¶31 We conclude that the district court used a 317% enhancement multiplier to the lodestar calculation based on nothing more than an attempt to equate it to 40% of the common fund. The district court abused its discretion by awarding a 3.17 multiplier enhancement--a 317% increase--to the lodestar calculation without evidence and supported by only a conclusory statement.

IV. The district court abused its discretion when it awarded a $400,000 incentive award to Class Representatives.

Â¶32 The final issue before the Court is the $400,000 incentive award. The district court abused its discretion when it awarded a $400,000 incentive award to Class Representatives.

Â¶33 Courts regularly grant incentive awards to compensate named class representatives for the work they performed--their time and effort invested in the case. Chieftain Royalty Co. v. Enervest Energy Int'l Fund XIII-A, L.P., 888 F.3d 455, 468 (10th Cir. 2017).[12] Our Court has not addressed the issue of incentive awards. We agree that incentive awards are justified as payment for reasonable services rendered by class representatives on behalf of the class that were helpful to the litigation. However, the request for an incentive award must be supported by sufficient evidence in the record. See, e.g., Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998). Further, the weight of authority warns against arbitrarily awarding incentive awards, such as with a percentage-based method. See Rubenstein, supra note 6, Â§ 17:16 ("Percentage-based awards are disfavored, if not altogether forbidden.").

Â¶34 Oklahoma courts should instead use a method to calculate an incentive award similar to the lodestar method. Courts should grant incentive awards to class representatives based on the actual time expended on services rendered and other factors similar to those outlined in Oklahoma's class action attorney fee statute pertinent to an incentive award. 12 O.S.Supp.2017, Â§ 2023(G)(4)(e); see Rubenstein, supra note 6, Â§ 17.12 (explaining incentive awards are based on evidence of the particular services performed, the risks encountered, and any other factors pertinent to the award).

Â¶35 In this case, the district court awarded $100,000 to each of the four trusts, giving Class Representatives $200,000 each. The record before us is devoid of any evidence of how the district court made this computation. It is also unclear why the district court awarded $100,000 to each of the four trusts; awarding the trusts--not the named Class Representatives--implies the incentive award was not based on the actual work performed by the two Class Representatives in this case. Further, Class Representatives testified only broadly about the tasks they performed but provided no evidence of the actual time spent on the case. The district court should grant an incentive award based on the actual work performed by the Class Representatives. We must therefore reverse the district court's incentive award to the Class Representatives for an abuse of discretion and remand for further fact-finding.

V. The district court abused its discretion when it withheld from McClure class counsel's time records in their entirety.

Â¶36 To ensure a reasonable fee on remand, we must address whether the district court used the correct procedure when it precluded McClure from viewing the descriptive time records at the attorney fee hearing. Oklahoma law required class counsel to present to the district court detailed time records showing the work performed to allow the district court, with certainty, to determine an attorney fee award. Burk, 1979 OK 115, Â¶ 20, 598 P.2d at 663. It was also necessary that McClure, as a royalty owner class member, be allowed to contest the time records reflecting the work his own attorneys charged him.

Â¶37 Class counsel admitted detailed time records into evidence "under seal," and the district court secluded the records for an in camera review. The in camera inspection was not used to determine whether the district court should withhold the time records in whole or in part. Instead, the inspection was an ex parte assessment of the reasonableness of the class counsel's time records.[13] To date, McClure has never seen the descriptive time records, and the records were never subjected to an adversarial contest at the evidentiary hearing. Oklahoma's class action attorney fee statute places the district court in a fiduciary role to the class when awarding fees. See 12 O.S.Supp.2017, Â§ 2023(G)(4)(b). The district court had a fiduciary duty to give full adversarial scrutiny to the attorney's fees requested based on its trust relationship with the class. Instead, the district court deprived McClure--standing in the shoes of the other 33,890 royalty owners--of the opportunity to review or meaningfully challenge the very fees he and the other class members are required to pay from their own royalty interests. Denying McClure the opportunity to review these records by withholding the descriptive time records in their entirety was improper and an abuse of discretion.

CONCLUSION

Â¶38 The goal in every attorney fee case is to arrive at a reasonable fee. Oklahoma's class action attorney fee statute gives courts flexibility and discretion in calculating fee awards under the lodestar or percentage method to arrive at this goal. In this case, the district court fell short of this goal.

Â¶39 The amount of attorney fees awarded by the district court is excessive in relation to the average percentage awarded in reported cases, the actual work performed by class counsel, and the recovery of each class member. The district court also awarded an incentive award to Class Representatives not based on evidence of work performed.

Â¶40 The district court abused its discretion when it awarded an unreasonable attorney fee award and an incentive award not supported by evidence. We remand for proceedings consistent with this opinion.

COURT OF CIVIL APPEALS' OPINION VACATED;
REVERSED AND REMANDED.

CONCUR: Darby, C.J., Kane, V.C.J., Kauger, Winchester, Edmondson, Combs (by separate writing), Gurich, and Rowe, JJ.

FOOTNOTES

[1] Billy J. Strack sued as trustee for the Patricia Ann Strack Revocable Trust Dtd 2/15/99 and the Billy Joe Strack Revocable Trust Dtd 2/15/99. Mark Stephen Strack became the sole trustee of the two trusts after the death of Billy Strack. Hazel Ariola sued as trustee of the Paul Ariola Living Trust and the Hazel Ariola Living Trust. Daniela A. Renner became the sole trustee of the two trusts after the death of Hazel Ariola.

[2] The district court certified the class, but the Court of Civil Appeals reversed the order concluding the requisites for a class action had not been met. Strack v. Cont'l Res., Inc., 2017 OK CIV APP 53, 405 P.3d 131. The parties entered into a settlement agreement after the Court of Civil Appeals remanded the case.

[3] The settlement for the Future Production Period involves not deducting Gathering Charges and Processing Transportation Charges; it does not include a cash settlement payment.

[4] Daniel McClure is a mineral interest owner and similarly situated as all other mineral interest owners in this litigation. The district court in its order awarding attorney's fees stated that McClure was acting as a friend of oil and gas companies and that McClure's position in this matter appears to be more in the nature of an amicus curiae acting on behalf of oil and gas class action defendants. There is no evidence to support these allegations. McClure is an attorney licensed to practice law in Texas and Oklahoma. However, he is also a mineral interest owner and a legitimate objector in this litigation.

[5] Title 12 O.S.Supp.2017, Â§ 2023(G)(4)(a) states:

4. In considering a motion for attorney fees filed after the effective date of this act:

a. the court shall conduct an evidentiary hearing to determine a fair and
reasonable fee for class counsel,

. . . .

[6] We recognize that courts in nearly every circuit either mandate or allow the percentage approach in class action common fund cases. See 5 William Rubenstein, Newberg on Class Actions Â§ 15:66 (5th ed.) (collecting cases): Rawlings v. Prudential-Bache Props., Inc., 743 F.3d 243, 247 (7th Cir. 2014) (allowing either the lodestar or percentage method); Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, 735 F.3d 993, 1002 (8th Cir. 2013) (stating that district courts may elect between a lodestar or percentage analysis); Union Asset Mgmt. Holding A.G. v. Dell, Inc., 669 F.3d 632, 644 (5th Cir. 2012) (allowing district courts the flexibility to choose between the percentage or lodestar method in common fund cases); McDaniel v. Cty. of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (holding courts may award attorney's fees in common fund cases under either the lodestar or percentage method); In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 992 (9th Cir. 2010) (holding the district court may exercise its discretion to choose between the lodestar or percentage method); In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005) (noting courts typically apply either the percentage or lodestar method); In re Thirteen Appeals. Arising out of San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 307 (1st Cir. 1995); Rawlings v. Prudential-Bache Props., Inc., 9 F.3d 513, 517 (6th Cir. 1993) (holding that use of either the lodestar or percentage method of calculating attorney's fees is appropriate in common fund cases); Camden I Condo. Ass'n., Inc. v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991); Brown v. Phillips Petroleum Co., 838 F.2d 451, 454 (10th Cir. 1988).

[7] Title 12 O.S.Supp.2017, Â§ 2023(G) states in pertinent part:

G. ATTORNEY FEES AND NONTAXABLE COSTS. 1. In a certified class action, the court may award reasonable attorney fees and nontaxable costs that are authorized by law or by the parties' agreement.
. . . .

4. In considering a motion for attorney fees filed after the effective date of this act:

a. the court shall conduct an evidentiary hearing to determine a fair and reasonable fee
for class counsel,
b. the court shall act in a fiduciary capacity on behalf of the class in making such
determination,

. . . .

e. in arriving at a fair and reasonable fee for class counsel, the court shall consider the
following factors:

(1) time and labor required,
(2) the novelty and difficulty of the questions presented by the litigation,
(3) the skill required to perform the legal service properly,
(4) the preclusion of other employment by the attorney due to acceptance of the case,
(5) the customary fee,
(6) whether the fee is fixed or contingent,
(7) time limitations imposed by the client or the circumstances,
(8) the amount in controversy and the results obtained,
(9) the experience, reputation and ability of the attorney,
(10) whether or not the case is an undesirable case,
(11) the nature and length of the professional relationship with the client,
(12) awards in similar causes, and
(13) the risk of recovery in the litigation. . . .

[8] These factors are substantially identical to those set out in Rule 1.5(a) of the Oklahoma Rules of Professional Conduct, 5 O.S.2011, ch. 1, app. 3-A, and Burk, 1979 OK 115, Â¶ 8, 598 P.2d at 661, with the exception that Section 2023(G)(4)(e) also includes factors like whether the case is undesirable, awards in similar cases, and the risk of recovery in the litigation. We note Oklahoma courts historically have applied the factors adopted in Burk to determine a reasonable fee in both fixed fee and contingency fee cases. See, e.g., In re Adoption of Baby Boy A, 2010 OK 39, 236 P.3d 116; Oliver's Sports Ctr., Inc. v. Nat'l Standard Ins. Co., 1980 OK 120, 615 P.2d 291.

[9] Four states have statutes similar to 12 O.S. Supp. 2013, Â§ 2023(G): Oregon (O.R.C.P. 32(M)(1)(e)), Iowa (Iowa R. Civ. P. 1.275(5)), Pennsylvania (Pa. R. Civ. P. 1717), and North Dakota (N.D. R. Civ. P. 23(p)). The courts in these states have given effect to the words of their legislatures by explicitly affording their trial courts the discretion to use either the percentage or lodestar method, as long as the courts analyze each of the mandatory factors outlined in the statutes. See, e.g., King v. Armstrong, 518 N.W.2d 336, 337-39 (Iowa 1994); Ritter, Laber and Assocs., Inc. v. Koch Oil, Inc., 740 N.W.2d 67 (N.D. 2007) (affirming a fee award in a common fund class action when the district court used the lodestar method and considered all the statutory required factors); Strawn v. Farmers Ins. Co. of Or., 297 P.3d 439, 443-52 (Or. 2013); Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 979-80 (Pa. 2011) (holding courts are permitted to award a reasonable fee pursuant to the lodestar method, percentage method, or a hybrid approach); Compare Tex. R. Civ. P. 42(i)(1) (explicitly forbids the use of the percentage method).

[10] Class counsel requested an hourly rate of $875 for counsel Douglas Burns and Terry L. Stowers and an hourly rate of $500 for counsel Kerry Caywood and Angela Caywood Jones. McClure contends that the rate of $875 is excessive. The party requesting attorney fees must offer evidence of the standard rate in the legal community at the time the attorney performed the services. Burk, 1979 OK 115, Â¶ 12, 598 P.2d at 662. The relevant legal community is the local community. Id. Â¶ 20, 598 P.2d at 663. Class counsel in this case performed highly specialized legal services. Class Representatives offered evidence that attorneys from national litigation firms that performed services in oil and gas class actions in Oklahoma charged hourly rates ranging from $550 to $900 per hour. The district court did not abuse its discretion when it considered rates of attorneys performing similar work in Oklahoma from national litigation firms. The rate of $875 per hour has a rational basis in the evidence presented. We also recognize that this litigation spanned a period of over 7 years, and the hourly rate has increased from 2010, when Class Representatives filed this matter.

[11] The district court's order states that the class members not opting out will receive an average of $1,022 per class member. This calculation is presumably based on the number of class members not opting out.

[12] An empirical study published in 2006 reviewed 374 opinions in class actions from 1993 to 2002. The average award per class representative was $15,992 and the median award was $4,357. See Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1302, 1303, 1348 (2006). In a study of cases from 2006 to 2011, the average award dropped to $11,697 and the median increased to $5,250. See Rubenstein, supra note 6, Â§ 17:8.

[13] McClure filed a motion to obtain the time records for the appeal. The district court denied this motion, and we affirmed the district court's ruling in our November 19, 2018 Order. Class Representatives argue that our Court's ruling is the settled law of the case. We disagree. To properly apply the law of the case doctrine, we must decide exactly what the first appellate decision determined expressly or impliedly. Shoemaker v. Estate of Freeman, 1998 OK 17, Â¶ 15, 967 P.2d 871, 875. This Court's November 19, 2018 Order decided an issue concerning the appellate record. The issue before us now is whether the district court used the correct procedure to preclude McClure from viewing the descriptive time records at the attorney fee hearing. Because this decision is determining a different issue, the law-of-the-case doctrine is not applicable. Patel v. OMH Med. Ctr., Inc., 1999 OK 33, Â¶ 22, 987 P.2d 1185, 1195.

Â 

Â 

COMBS, J., concurring:

Â¶1 I concur in the opinion of the majority in the reversal of the trial courts determination of the attorney fee award for class counsel. I write to express my opinion of an appropriate attorney fee for class counsel as determined from the record before us.

Â¶2 The present litigation has consumed over seven years without a trial on the merits. The class of 33,890 royalty owners has patiently waited while the parties negotiated the ultimate settlement of the common fund. What remains is the determination of an appropriate attorney fee and the fee for class representatives. While I concur the fee set by the trial court using a multiplier of 3.17 was unreasonable and not supported by the evidence I would grant an attorney fee to class counsel under the methodology expressed in the majority opinion using a multiplier of 2.0. As stated in the opinion such a computation would result in an attorney fee of $12,500,000 which is comparable to an award of 25% of the common fund.

Â¶3 As the majority opinion states, the record before this court is insufficient to determine an appropriate fee for class representatives (incentive fee). A remand to the trial court for further fact finding on the appropriateness of a Class Representative fee is warranted. It is my hope that the need for finality to these proceedings and the ultimate disposition of settlement funds to the individuals of this class will expedite the trial courts fact finding mission to reach a conclusion with finality to this action.